A94A2510. BOLD CORPORATION, INC. v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
(454 SE2d 582)

SMITH, Judge.

Bold Corporation, Inc., which operates an herbicide blending facility, brought this action against its insurer, National Union Fire Insurance Company of Pittsburgh, Pa., seeking damages under a contract of property insurance arising from the contamination of certain agricultural chemicals formulated by Bold. The insurer denied the claim, contending the loss was excluded from coverage under the policy. Cross-motions for summary judgment were filed, and the trial court granted the insurer's motion and denied that of Bold.

The parties disagree regarding the construction of the policy exclusions and their application to the material facts, which are undisputed. They agree that the loss was caused by contamination of two products blended by Bold: Linex 50 DF and Lorox DF. They also agree that these products were contaminated by the presence of Fluometuron. Fluometuron, a powdery substance, is an ingredient of Meturon 80 DF, a product blended by Bold immediately prior to the runs of Linex 50 DF and Lorox DF that were contaminated. Bold concedes that the Fluometuron that contaminated the Linex 50 DF and Lorox DF runs was "residue left from the Meturon 80 DF run."

The policy in issue is an all-risk policy; it covers the insured against "all risks of direct physical loss or damage . . . from any external cause" except those excluded in the policy. The policy contains a number of exclusions, including those barring coverage for losses

caused by "errors in processing," "mixing," "maintenance," and "pollution."

1. Bold contends that none of these exclusions is applicable because no evidence exists that the loss was occasioned by any of these excluded causes. We need not address each of the exclusions because we find it clear that the exclusion covering "errors in processing" is applicable and bars recovery.

After completing an in-house investigation of the contamination, Bold's safety director, Nancy Davis, issued a written report identifying several factors contributing to the loss. According to the report, one factor was that Bold experienced problems with its air filtration system during the blending of Meturon 80 DF between November 27, 1991 and December 30, 1991.[1] These problems apparently "made significant contributions to the contamination of subsequent products."

Another factor was that "the schedule did not allow enough time to do a full wash-down of the equipment" after the Meturon 80 DF run. After blending the Meturon 80 DF the equipment was cleaned using "clay flushes" and "sweep downs," but the Fluometuron remained "trapped" in the system in large quantities. The day after the Meturon 80 DF run was completed, Bold began blending Linex 50 DF. Moreover, the clay flush was not analyzed for the presence of Fluometuron after the cleaning.

Because no new contaminant was introduced during the Lorox run, Davis concluded that the Fluometuron was left in the system after the Meturon run despite the clay flushes and sweep downs, and she recommended that a complete wash-down always be conducted between runs in the future. She concluded that "clay flushes with sweep downs are insufficient to thoroughly clean the equipment." She also recommended that "[t]he scheduling of products should allow sufficient time for a proper clean-out of equipment," and that the clay flushes be analyzed before a product is run.

In denying the claim, National Union relied on its own investigation and on Davis's report. Both point to inadequate cleanup as being at least partly responsible for the contamination. Further, Bold admits that cleanup is part of "processing."

Contrary to Bold's assertions in its brief, therefore, the losses resulted from Bold's "errors in processing," which under the plain meaning of the language of the policy are excluded from coverage.[2] Words in an insurance contract must be given their usual, ordinary,

---

[1] Although the report is titled "preliminary in-house investigation of product contamination," it was adopted as a final report and the facts contained therein were accepted by Bold as true.

[2] The same reasoning would bar coverage under the "maintenance" exclusion, which excludes losses caused by maintenance of insured property.

and common meaning. OCGA § 13-2-2 (2). The term at issue here is unambiguous. "It is the function of the court to construe the contract as written and not to make a new contract for the parties. [Cit.]" *Bartlett v. American Alliance Ins. Co.*, 206 Ga. App. 252, 254 (424 SE2d 825) (1992). The parties' rights respective to a policy of insurance must be determined by the terms of the contract. Where the language of the contract fixing the extent of coverage is unambiguous, as here, and but one reasonable construction is possible, this court must enforce the contract as written. A term in an insurance policy that unambiguously and lawfully limits the insurer's liability may not be extended beyond what is fairly within its plain terms. *Perkins Hardwood Lumber Co. v. Bituminous Cas. Co.*, 190 Ga. App. 231, 232 (1) (378 SE2d 407) (1989). National Union was entitled to judgment as a matter of law because coverage was excluded for this loss. The trial court did not err in granting National Union's motion for summary judgment.

2. Our conclusion that the loss was excluded from coverage under the policy renders moot Bold's contention that it was entitled to judgment as a matter of law.

*Judgment affirmed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 10, 1995 —
RECONSIDERATION DENIED FEBRUARY 23, 1995 —

*Thomas E. Pujadas*, for appellant.
*Robins, Kaplan, Miller & Ciresi, R. Dennis Withers, Judith I. Harris*, for appellee.