A97A1933. ARKIN v. FIREMAN'S FUND INSURANCE COMPANY.
(492 SE2d 314)

ELDRIDGE, Judge.

This is an appeal from the trial court's granting of appellee Fireman's Fund Insurance Company's motion for summary judgment and the denial of appellant Dr. David B. Arkin's cross-motion for summary judgment. Dr. Arkin seeks recovery from appellee under his homeowner's insurance policy for loss occasioned by the sinking and settling of a culvert which was part of the driveway serving his residence.

The driveway which leads to appellant's residence crosses a ravine with a creek running though it. A culvert was installed in order to allow the driveway to cross over the ravine and to accommodate the flow of the creek beneath it. The culvert consisted of three large corrugated steel pipes, approximately 60 inches in diameter, laid side by side in the creek bed parallel to the flow of the creek. Stone headwalls, approximately 12 feet tall, were constructed on either end of the pipes in order to secure the pipes and to serve as a bridge support for the driveway. To this end, the space between the headwalls was filled in with dirt, covering the pipes below and forming a bed for the driveway as it crossed the ravine. The concrete driveway was then laid on top of the fill dirt.

During construction, the headwalls were built using the creek bed as their foundation, as opposed to the standard industry practice of sinking footers approximately two to three feet into the creek bed as a foundation for the headwalls. The corrugated steel pipes were laid on the ground of the creek bed. No footing or other support had ever been constructed underneath the headwalls or the pipes. As a result of this construction, water scouring and erosion occurred over time, which scouring, along with the weight and pressure from the automobiles crossing the structure, caused the soil around the headwalls and between the pipes to wash away; the headwalls to crack and crumble, as well as to shift and sink into the creek bed; the concrete driveway to crack and settle onto the culvert pipes; and the corrugated steel pipes to begin to flatten from the ensuing weight. Appellant first noticed the problem when a rather large sinkhole appeared beside that portion of the driveway that crossed the culvert.

The entire structure was severely distressed and was in danger of imminent collapse. The appellant had it repaired for approximately $45,000 and filed a claim with appellee. Appellee determined that such damage was not covered under the terms of its policy and denied appellant's claim. Appellant filed suit. Cross-motions for summary judgment were filed, and the trial court granted summary judgment to appellee Fireman's Fund Insurance Company, finding that the terms of the policy precluded appellant's recovery. For the same reasons, the trial court denied appellant's cross-motion for summary judgment.

Dr. Arkin appeals and raises five enumerations of error which each address the same factual question, i.e., what is the nature of the structure and what is the type of damage it sustained. Appellant acknowledges that his right to recover for the loss of the culvert under the terms of the insurance policy turns solely upon whether or not the definition of "building" would include the culvert. This is so because, under the terms of the policy, recovery for damage due to imminent collapse is specifically limited to *buildings* only: "We insure for direct physical loss to covered property involving collapse of a building or any part of a building." Thus, appellant concedes that his right to recovery for the imminent collapse of the culvert requires a determination by this Court that the culvert is a "building," as opposed to another type of structure which is excluded under the policy, such as "pavement, underground pipe, drain, foundation, or retaining wall."

In addition, the terms of the insurance policy limit recovery for the collapse of a *building* to only six possible causes, just one of which, appellant acknowledges, would be even arguably applicable in the instant case, i.e., "hidden decay." Thus, appellant concedes that to recover under the terms of the policy, this Court must determine, not only that appellant's culvert is a "building," but also that the imminent collapse of the culvert was caused by "hidden decay," as opposed to other precluded causes of collapse, such as "settling, shrinking . . . (including the cracking which results)."

Finally, in order for appellant to recover, this Court must also determine that the type of damage sustained by the culvert is not *specifically excluded* under the terms of the policy, which lists the following "Exclusions": (1) "Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs, or ceilings"; (2) "Water Damage, meaning: . . . [w]ater below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure"; (3) "Earth movement, meaning: . . . mudflow; earth sinking, rising or shifting"; and

(4) "Faulty, inadequate or defective: . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction." *Held*:

We decline appellant's invitation to include a culvert within the plain meaning of the term, "building." This Court recognizes the substance of the definitions for a "building" which were submitted by appellant from The Illustrated Encyclopedic Dictionary and The Shorter Oxford English Dictionary on Historical Principles; both of these somewhat obscure sources essentially define a "building" as anything "built." However, we are not persuaded thereby and will utilize the more common understanding of "building" as defined by more mainstream sources: The American Heritage Dictionary, Random House Dictionary of the English Language, and Black's Law Dictionary, which define a "building" as, respectively: "Something that is built, as for human habitation"; "a relatively permanent construction having a room and walls, used for living, manufacturing, etc."; "structure designed for habitation, shelter, storage, trade, manufacture . . . inclosing a space within its walls, and usually, but not necessarily, covered with a roof."[1] All of these sources add an element of physical human habitation and usage to the definition of the word "building" that is missing from appellant's broad classification. "Words in an insurance contract must be given their usual, ordinary, and common meaning. OCGA § 13-2-2 (2)." *Bold Corp. v. Nat. Union Fire Ins. Co.*, 216 Ga. App. 382, 383-384 (454 SE2d 582) (1995). As such, a culvert is not a building.[2]

Further, the trial court in the case sub judice was disinclined to determine whether "hidden decay" was the cause of the culvert's collapse. We have no reticence in making such determination. The scouring, erosion, and washing away of soil are not "decay." Decay is rot; the decomposition of organic matter as a result of bacterial, fungal, or insecticidal action, resulting in destruction or dissolution.[3] Moreover, from the photographs contained in the record which show the extensive cracking and crumbling of the structure, as well as the alarming loss of soil, the deterioration of the culvert can in no way be considered "hidden" so as to preclude discovery prior to its imminent collapse. From the record, it is clear that such discovery was not

---

[1] The American Heritage Dictionary, 3rd ed., p. 250; Random House Dictionary of the English Language, 1980, p. 118; Black's Law Dictionary, 6th ed., pp. 194-195.

[2] Compare *Great Eastern Cas. Co. v. Blackwelder*, 21 Ga. App. 586 (94 SE 843) (1918), in which this Court determined that a semi-permanent concrete, timber, and steel derrick with a loading crane on top, which structure also contained an operator's shed on an upper platform, was a "building" for purposes of recovery under an accidental death insurance policy; the upper levels collapsed into the river below, killing the operator, Blackwelder.

[3] See The American Heritage Dictionary, 3rd ed., p. 482; see also "Synonyms," id. at 482.

made timely, because no one looked. In an insurance contract, "[w]here the meaning is plain and obvious, it should be treated as literally provided therein." (Citations and punctuation omitted.) *U. S. Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 78-79 (355 SE2d 428) (1987). Clearly, then, "hidden decay" was not applicable to the circumstances herein.

Finally, even if a culvert could be considered a building, and even if erosion was synonymous with rot, recovery for the collapse of appellant's culvert would be precluded under the specific "Exclusions" listed in the insurance policy for damage that occurs because of settling, underground water damage, earth movement,[4] and, most applicably, because of faulty design and construction.

The plain and unambiguous terms of the insurance contract, supported by evidence of record, pierced the allegations of appellant's complaint, thereby supporting appellee's motion for summary judgment; thereafter, the burden of *production* shifted to appellant to present *any* evidence which would give rise to a genuine issue of material fact in support of appellant's recovery under the terms of the policy. OCGA § 9-11-56 (c), (e). Appellant presented no such evidence. Accordingly, the trial court did not err in granting appellee's motion for summary judgment and in denying appellant's cross-motion.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

Decided September 17, 1997 — 

*Ronald L. Hilley*, for appellant.
*Swift, Currie, McGhee & Hiers, Michael H. Schroder, Craig A. Langley*, for appellee.

---

[4] See *Underwood v. U. S. Fidelity &c. Co.*, 118 Ga. App. 847 (165 SE2d 874) (1968).