76 A.3d 517

**PEOPLE'S INSURANCE COUNSEL DIVISION**

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPANY.**

No. 1353, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 26, 2013.

440

Peter K. Killough (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellant.

Michael J. Budow (Melissa D. McNair, Budow and Noble, PC, on the brief) Bethesda, MD, for appellee.

Panel: EYLER, DEBORAH S., ZARNOCH, J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

During a blizzard in the winter of 2010, Moira and Gregory Taylor's carport in West River, Anne Arundel County, collapsed under the weight of ice and snow. They filed a claim under their homeowners insurance policy ("the Policy") with State Farm Fire and Casualty Insurance ("State Farm"), the appellee. State Farm denied the claim on the ground that the

carport was not a "building" and that the Policy only covered losses due to collapse of buildings.

The Taylors filed a complaint with the Maryland Insurance Administration ("the MIA"), alleging that State Farm had violated Md.Code (1995, 2011 Repl.Vol.) section 27–303 of the Insurance Article ("Ins."), prohibiting unfair claim settlement practices, by "refus[ing] to pay [their] claim for an arbitrary or capricious reason based on all available information" or "fail[ing] to act in good faith" in settling their claim. *Id.* at §§ 27–303(2) and (9), respectively. The People's Insurance Counsel Division ("PICD"),[1] the appellant, intervened on behalf of the Taylors. Following a hearing before the Associate Deputy Commissioner of the MIA, the Insurance Commissioner ("the Commissioner") issued a final decision ruling that State Farm had not violated Ins. section 27–303. PICD filed a petition for judicial review of that decision in the Circuit Court for Baltimore City. The circuit court affirmed the final decision of the MIA.

PICD presents one question for review, which we have rephrased:

Was the MIA's decision finding that State Farm did not violate the Insurance Article when it denied the Taylors' claim legally correct and supported by substantial evidence in the record?

For the reasons to follow, we answer that question in the affirmative and shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

### A. The Policy

We begin by setting forth the relevant Policy provisions. "SECTION I—COVERAGES" provides in pertinent part:

---

1. PICD is a unit within the Office of the Attorney General. It evaluates each complaint filed with the MIA by a consumer arising under a homeowners insurance policy. Md.Code (1984, 2009 Repl. Vol.) § 6–306(a) of the State Government Article. If it determines that "the interests of insurance consumers [may be] affected" by the resolution of the complaint, it may intervene and appear on behalf of insurance consumers before the MIA and the courts. *Id.*

**442**

COVERAGE A—DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the residence premises shown in the Declarations.

Dwelling includes:

a. structures attached to the dwelling[.]

\* \* \*

2. **Dwelling Extension.** We cover other structures on the residence premises, separated from the dwelling by clear space....

(Emphasis in original.)

"SECTION I—LOSSES INSURED" states that the Policy covers "accidental direct physical loss to *the property described in Coverage A* except as provided in SECTION I—LOSSES NOT INSURED." (Emphasis added.) That section provides in relevant part:

1. We do not insure for any loss to *the property described in Coverage A* which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through o. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. *collapse, except as specifically provided in SECTION I—ADDITIONAL COVERAGES, Collapse.*

(Italicized and bolded emphasis added.)

"SECTION I—ADDITIONAL COVERAGES" includes twelve numbered subsections. Subsection 11 governs "Collapse," providing, as relevant, "We insure only for direct physical loss to covered property involving the sudden, entire collapse *of a building or any part of a building,*" including collapse caused by "weight of ice, snow, sleet, or rain which collects on a roof." (Emphasis added.) Subsection 11 specifically excludes from coverage losses to an "awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier,

wharf or dock" unless such a loss was directly caused by the "collapse of the building."

The "DEFINITIONS" section of the Policy does not define "building" or "structure."

### B. The Taylors' Claim

Ms. Taylor owns the West River house, which is located at 1025 Dunnington Place ("the Property"). She and her husband reside there. In 2007, the Taylors decided to erect a detached carport on the Property.[2] After choosing the design for the carport, Ms. Taylor called Angela Yancey, her State Farm insurance agent, to ask whether a carport would be "covered" under the Policy. Ms. Yancey replied that it would be "covered."

The 20–foot by 24–foot carport was constructed on an existing asphalt pad next to the house. It had a metal, pitched roof with gable ends. It did not have any walls. The roof was supported by ten metal poles, five on each side, secured to a steel track that, in turn, was secured to the asphalt pad. The carport was not attached to the Taylors' house.

On February 10, 2010, a blizzard hit Maryland. The carport collapsed under the weight of more than a foot of snow and ice. It landed on the Taylors' two cars, a snow blower, and a power washer.

The next day, the Taylors called Ms. Yancey to report the collapse of the carport, other damage to their house caused by the storm, and the damage to their vehicles and other personal property. Ms. Yancey forwarded the Taylors' claim to the claims division of State Farm.[3]

---

2. There had been a carport on the property when Ms. Taylor purchased the home. It was in very bad condition, however, so she had it removed.

3. The portion of the claim pertaining to the damage to the Taylors' vehicles is not at issue in this case.

The Taylors asked Ms. Yancey whether they could arrange for the carport to be removed from the Property so they could gain access to their cars. Ms. Yancey advised them to take pictures of the damage before taking any steps to remove the carport. The Taylors did so and then had the carport removed. On February 24, 2010, Ms. Yancey issued a check to the Taylors for $1,250, to cover the cost of removing the carport. The check was issued from Ms. Yancey's discretionary funds and did not include a reservation of rights.

Because of the widespread damage caused by the blizzard, State Farm's Catastrophe Services Division in Alabama assembled a catastrophe team to adjust the claims. Field representatives dispatched to the affected areas were verbally instructed by their on-site team managers that under the standard policy language losses due to collapse only were covered for buildings *and* that a building is a structure with a roof and at least three walls.

On March 2, 2010, Jeanie Havens, a member of the catastrophe team, traveled to the Property to adjust the Taylors' claim. The carport already had been removed, so Mr. Taylor showed Ms. Havens pictures of the collapsed carport. Ms. Havens took one picture with her. She informed Mr. Taylor that the loss to the carport and the personal property inside of it would not be covered because the carport was not a "building." Mr. Taylor told Ms. Havens to get off the property.

In a letter dated that same day, Ms. Havens formally advised the Taylors that their claim had been denied. She explained that, based on her inspection and discussion with Mr. Taylor, the "damage to [the] carport and contents located beneath it was caused by collapse" and that "[d]amage resulting from this cause of loss is not covered by [the Policy]." The letter went on to quote the pertinent Policy provisions, including "SECTION I—LOSSES INSURED, COVERAGE A—DWELLING"; "SECTION I—LOSSES NOT INSURED"; and "SECTION I—ADDITIONAL COVERAG-

ES." [4]

Two months later, on May 12, 2010, Ms. Taylor wrote to the MIA to request a formal investigation into the denial of the claim, pursuant to Ins. section 27–303, which prohibits insurers from engaging in unfair claim settlement practices. The MIA's Property and Casualty Division investigated the Taylors' complaint and, on November 12, 2010, determined that State Farm's action in denying the claim "ha[d] not been shown to be arbitrary, capricious, or lacking in good faith."

On December 13, 2010, the Taylors requested a hearing before the MIA on their complaint. The hearing was held on February 7, 2012, before the Associate Deputy Commissioner ("ADC").[5] At the outset of the hearing, the ADC granted, over State Farm's objection, PICD's motion to intervene. Mr. and Ms. Taylor testified in their case. In addition to the above-stated facts, they also testified that wind may have been a factor in the carport's collapse.

PICD called an expert witness, Jeffrey Gould. Mr. Gould, a CPA and licensed public adjuster with American Claims Management Services, opined based on his experience handling thousands of homeowners insurance claims that the terms "structure" and "building" are synonymous. For this reason, he was of the view that the Taylors' claim should have been covered as a loss due to the collapse of a building. Mr. Gould also testified that in preparation for his testimony he had reviewed homeowners insurance policies of approximately ten

---

4. The letter also quoted an excerpt from "SECTION I—LOSSES INSURED, COVERAGE B—PERSONAL PROPERTY," stating that the Policy covers loss to personal property "contained in a building" caused by collapse due to weight of snow and ice. That section governed the coverage decision for the loss to the snow blower and the power washer located within the carport. State Farm initially denied the Taylors' claim for the loss to this personal property based upon its determination that the carport was not a building. It later rescinded its denial of this portion of the claim because it determined that the personal property inside the carport was covered under a coverage provision for "Falling objects" peril.

5. Ins. section 2–210(d) authorizes the Commissioner to delegate "the responsibility for holding a hearing" to the ADC, among others.

different insurers doing business in Maryland. One of those policies, issued by Allstate, defined the term "building structure" to mean a "building with a roof and four walls." The other nine policies did not define the term "building."

State Farm called Ms. Havens, Ms. Yancey, and Daniel Hagan, a State Farm claims team manager, as fact witnesses, and called Stanley Lipshultz as an expert witness. Ms. Havens testified about the instructions she had been given by her on-site team manager prior to being dispatched to Maryland to adjust claims resulting from the blizzard. She explained that she had been instructed that a "building would be constituted as a structure that had a roof and at least three enclosed walls permanently affixed." She handled "all collapse claims" in accordance with this instruction. She further stated that she had been given identical instructions in the past concerning the definition of a building.

Ms. Yancey testified that her decision to issue a check to the Taylors in February of 2010 was discretionary with her office and did not reflect a determination that the claim for the loss of the carport was covered. She also testified that she had no recollection of having a conversation with Ms. Taylor in 2007 concerning the planned construction of the carport. In any event, Ms. Yancey stated that, if she had advised Ms. Taylor that a carport would be "covered" under the Policy, that would have been a correct statement because for most losses a carport is covered as a dwelling extension.

Mr. Hagan testified that in May 2010 he conducted a secondary review of the denial of the Taylors' claim. He concurred with Ms. Havens's decision to deny the claim for the loss to the carport, but countermanded her decision to deny the claim for the loss to the personal property located inside the carport, i.e., the snow blower and the power washer. Mr. Hagan explained his step-by-step coverage analysis under the Policy. First, he determined that the carport was covered as a "dwelling extension" because it was a "structure on the ... premises separated from the dwelling by clear space." Second, he determined that a loss to a dwelling extension

would be covered except as provided in "SECTION I—LOSS-ES NOT INSURED." Third, he determined that that section excludes a loss caused by collapse unless specifically included in the "ADDITIONAL COVERAGES" section. Fourth, he determined that the "ADDITIONAL COVERAGES" section states that loss due to collapse caused by certain named perils, including the weight of ice or snow, is covered, but only if the collapse is "of a building or any part of a building." Mr. Hagan explained that, when a Policy term is not defined, the standard practice is to use "the layman's definition," which, in the case of the word "building," is "[a] structure with walls and a roof." Under that definition, a "poled carport with a roof is not a building." He thus concluded that the Policy did not cover the loss of the carport due to collapse because the carport was not a "building."

Mr. Lipshultz, a consultant and insurance instructor, opined based on his familiarity with insurance industry practices in adjusting claims that State Farm had not denied the Taylors' claim arbitrarily or capriciously or without acting in good faith.

On March 23, 2012, the Commissioner issued a "Memorandum and Final Order" denying the Taylors' complaint based upon the ADC's findings of fact, which the Commissioner adopted. In the "Findings of Fact" section, the Commissioner credited Ms. Taylor's testimony that, before the carport was erected, she asked Ms. Yancey whether a carport would be covered under the Policy. The Commissioner further found that there was no dispute that the carport was a permanent structure, that it was not attached to the Taylors' house, and that it did not have any walls. She also found as a fact that the Taylors' loss was caused by collapse due to the weight of snow and ice, explicitly rejecting the Taylors' assertion that "perhaps wind or tree branches" had caused the collapse.

The Commissioner credited Ms. Havens's testimony that she denied the Taylors' claim based solely upon the verbal instructions she and the other members of the catastrophe team had received and that these instructions were consistent

with instructions she had received in the past concerning the meaning of the term "building." The Commissioner found Mr. Hagan's testimony about "the process by which he determined that the collapse of the carport due to the weight of ice and snow on its roof was not a covered loss" helpful, noting that Mr. Hagan made his claim determination "independent[ ] of the prior determination [by Ms. Havens]" and that he applied a standard, layman's definition of the word "building" in reaching his claim determination.

In the "Discussion" section of her "Memorandum and Final Order," the Commissioner set forth the parties' contentions and the statutory framework governing a complaint alleging unfair claim settlement practices under Ins. section 27–303. She then analyzed the Taylors' complaint, ruling that they had failed to prove by a preponderance of the evidence that State Farm's "refusal to pay the Claim was for a reason other than a lawful principle or standard which the Insurer applies across the board to all claimants, was unreasonable based on all available information, based on a whim, or demonstrated a failure to act in good faith." The Commissioner reasoned that the Policy did not "use the terms 'building' and 'structure' interchangeably" and that "only a building is covered for collapse." She emphasized that before the MIA the Taylors, not State Farm, bore the burden of proof and persuasion to demonstrate that State Farm had acted arbitrarily, capriciously, or with a lack of good faith in denying their claim—a burden they did not meet. She specifically rejected the Taylors' argument that the denial had to have constituted a violation of Ins. section 27–303(2) and (9) because "the only reasonable interpretation of [the Policy] is that [the Taylors'] permanent carport is a building."

Finally, the Commissioner observed that the Taylors "relied heavily, almost exclusively, on the fact that they installed the carport only after [Ms. Taylor] read the Policy and confirmed with [Ms. Yancey] that the carport was covered under the Policy." She emphasized that Maryland appellate cases make plain that the language of an insurance policy is determinative of coverage and contrary representations by insurance agents

have no impact on whether a loss is covered. For all of these reasons, the Commissioner denied the Taylors' complaint.

On April 19, 2012, PICD petitioned for judicial review of the MIA decision. On August 9, 2012, the circuit court affirmed the decision of the MIA. This timely appeal followed.

## STANDARD OF REVIEW

In this appeal from the judgment of the circuit court on judicial review of a final agency decision, we look "through" the decision of the circuit court and review the decision of the MIA. *People's Counsel v. Country Ridge Shopping Ctr., Inc.,* 144 Md.App. 580, 591, 799 A.2d 425 (2002). *See also Ins. Comm'r v. Engelman,* 345 Md. 402, 411, 692 A.2d 474 (1997) (reviewing a final decision of the Insurance Commissioner). Our review of the agency decision is circumscribed. *See Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67, 729 A.2d 376 (1999). It is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994).

In applying these standards, we review the record in the light most favorable to the agency and "defer to [its] fact-finding and drawing of inferences" if supported by any evidence in the record. *Banks, supra,* 354 Md. at 68, 729 A.2d 376. We review purely legal decisions *de novo. See People's Counsel v. Loyola College in Md.,* 406 Md. 54, 67–68, 956 A.2d 166 (2008). Even so, with respect to an agency's legal conclusions, we give "considerable weight" to the agency's "interpretation and application of the statute which the agency administers." *Banks,* at 69, 729 A.2d 376. *See also Marzullo v. Kahl,* 366 Md. 158, 173, 783 A.2d 169 (2001) (appellate court must accord appropriate deference to agency expertise even with respect to conclusions of law). In the context of appellate review of an administrative agency decision on a mixed question of law and fact, we apply the substantial evidence test.

*Charles County Dep't of Social Servs. v. Vann,* 382 Md. 286, 296, 855 A.2d 313 (2004).

## DISCUSSION

■ PICD contends State Farm "did not have a legal basis to deny the Taylors' claim." This is so, it argues, because State Farm's chosen definition of the word "building" is unsupported by case law, dictionary definitions, and State Farm's own past practice and therefore was a prohibited *ad hoc* determination made in violation of Ins. section 27–303(2) and (9). Accordingly, PICD maintains, the MIA's decision that State Farm's denial of the Taylors' claim for loss to the carport was not arbitrary, capricious, or made with a lack of good faith was legally incorrect.

State Farm responds that the MIA's decision that it (State Farm) adjusted the Taylors' claim in good faith and that it did not deny their claim for loss to the carport for an arbitrary or capricious reason is entitled to deference as a finding on a mixed question of law and fact. It asserts, however, that, even if viewed as a pure question of law, the Policy language is plain and unambiguous and was properly construed by State Farm as not affording coverage for the loss to the carport. Therefore, having denied the Taylors' claim in accordance with the plain language of the Policy, State Farm could not have been found to have denied the claim for an arbitrary or capricious reason or not in good faith.

■ Ins. section 27–303, entitled "Unfair claim settlement practices," prohibits insurers from, among other things, "refus[ing] to pay a claim for an arbitrary or capricious reason based on all available information" and "fail[ing] to act in good faith ... in settling a first-party claim under a policy of property and casualty insurance." Ins. § 27–303(2) and (9). An insurer acts arbitrarily or capriciously when it refuses to pay a claim " 'subject to individual judgment or discretion' " or " 'based on an unpredictable whim.' " *Berkshire Life Ins. Co. v. MIA,* 142 Md.App. 628, 671, 791 A.2d 942 (2002) (quoting with approval from a decision of the MIA). An insurer does

not act in good faith if it fails to make "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Ins. § 27–1001(a). If the Commissioner rules that an insurer violated Ins. section 27–303, a penalty of up to $2,500 for each violation may be imposed and restitution may be ordered for each claimant suffering damages as a result of any violation. Ins. § 27–305.

The MIA's decision in this case turned on whether State Farm adopted an unreasonably narrow, *ad hoc* interpretation of the Policy, in particular of the operative word "building" in the Policy, or denied the claim without engaging in any honest and diligent effort to reach an informed judgment as to whether the loss was covered. The MIA determined for several reasons that the Taylors failed to show that State Farm had done either.

For the most part, PICD does not dispute the MIA's first-level factual findings, that Ms. Havens made the initial decision to deny the Taylors' claim based on the instruction given to her by a supervisor about the meaning of the word "building"; that the instruction was applied across-the-board to all the claims resulting from the blizzard; that the instruction was consistent with instructions Ms. Havens previously had received; [6] that, subsequent to Ms. Havens's decision to deny the Taylors' claim, Mr. Hagan independently reviewed that decision; and that Mr. Hagan reached the same claim determination with respect to the carport but a different claim determination with respect to the snow blower and the power washer. The Taylors did not present any evidence that the definition of "building" used by State Farm in adjusting their claim was inconsistent with the definition of "building" it had used in adjusting other claims. Finally, PICD's own expert

---

6. In its reply brief, PICD disputes that Ms. Havens had applied this definition of the term "building" prior to her deployment to Maryland following the 2010 blizzard. Her testimony on this point was clear. She stated that she had been "advised before [*i.e.,* prior to the 2010 blizzard] that a building for policy purposes would constitute a roofing structure with at least three walls."

witness testified that the definition of "building" used by State Farm was consistent with that used by Allstate, the only insurer doing business in Maryland that included a definition including the word "building" in its homeowners insurance policies.

■ Whether State Farm refused to pay the Taylors' claim for an arbitrary or capricious reason or failed to act in good faith in denying the claim are mixed questions of law and fact in that they call upon the MIA to make first-level factual findings and then determine the ultimate legal significance of those findings. As noted, in administrative agency cases, mixed questions of law and fact are subject to judicial review for substantial evidence. *See Vann, supra,* 382 Md. at 296, 855 A.2d 313. This is a function of deference to agency experience, which logically extends not only to the making of first-level factual findings, but also to ascertaining the significance of first-level facts within the statutory scheme the agency administers.[7]

The findings of the MIA in the case at bar constituted substantial evidence to support its ultimate determination that State Farm denied the Taylors' claim based upon a "lawful principle or standard" that the insurer applied consistently to all claims and that State Farm acted honestly and diligently in adjusting the claim, *i.e.,* in good faith. On this basis alone, we would affirm the decision of the MIA. Even if we disagreed with State Farm's interpretation of its Policy language, we would conclude that the record contains substantial evidence to support the MIA's decision that State Farm did not adjust the Taylors' claim arbitrarily or without good faith and hence did not engage in the alleged unfair claim settlement practices.

7. In other areas of the law, in which the court, not an administrative agency, has the ultimate expertise, mixed questions of law and fact are reviewed *de novo.* For example, on review of a suppression court's decision whether a defendant's Fourth Amendment rights were violated, we extend deference to the court's first-level factual findings but determine *de novo* (as a matter of law) the constitutional significance of those facts. *See, e.g., Cartnail v. State,* 359 Md. 272, 282–83, 753 A.2d 519 (2000).

■■ In fact, we agree with State Farm's interpretation of its Policy language, as did the MIA, and also would affirm on that basis. An insurance policy is a contract and is construed subject to the principles of contract interpretation. *See, e.g., N. River Ins. Co. v. Mayor & City Council of Balto.*, 343 Md. 34, 39, 680 A.2d 480 (1996). As this Court has explained:

> The first principle of construction of insurance policies in Maryland is to apply the terms of the contract, to determine the scope and limitations of its coverage. This principle serves to achieve the touchstone of policy construction—to ascertain and effectuate the intent of the parties to the agreement. To divine properly the parties' intent, the policy is viewed as a whole, without emphasis being placed on particular provisions. Moreover, whenever possible, each clause, sentence, or provision shall be given force and effect.

*Empire Fire and Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md.App. 72, 96, 699 A.2d 482 (1997) (citations and internal quotation marks omitted).

■■ In construing specific words or terms in an insurance contract, we give them their "customary, ordinary, and accepted meaning." *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 324 Md. 44, 56, 595 A.2d 469 (1991). "If the terms are unambiguous, the court may construe the insurance contract as a matter of law." *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995 (2003). A term is ambiguous if " 'a reasonably prudent person' would understand the term as susceptible to more than one possible meaning." *Id.* (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 306, 753 A.2d 533 (2000)). Whether a term is ambiguous is itself a question of law. *Philadelphia Indem. Ins. Co. v. Md. Yacht Club, Inc.*, 129 Md.App. 455, 468, 742 A.2d 79 (1999).

In the case at bar, State Farm asserts that the word "building" as used in the Policy is plain and unambiguous and means a structure with a roof and at least three walls. It relies on case law and dictionary definitions to this effect and

on the way in which the word is used in the Policy. PICD agrees that the word "building" is plain and unambiguous, but maintains that it is synonymous with the word "structure." It relies upon a dictionary definition to this effect. It also points out that the Anne Arundel County Code requires that carports have at least two open sides, which means that all carports in that county will be excluded from coverage under State Farm's definition of the word "building." Alternatively, PICD maintains that the word "building" as used in the Policy is susceptible of more than one meaning and therefore the Policy should be construed in favor of insurance consumers and against State Farm, as the drafter.

The broad definition of the word "building" urged by PICD plainly is at odds with how that word is used in the Policy. The words "structure" and "building" are not used interchangeably in the Policy. A "structure" that is attached to a dwelling is part of the dwelling. A structure that is "separated from the dwelling by clear space" or is attached to the dwelling by "only a fence, utility line, or similar connection" is an "other structure" that is covered as a "dwelling extension" under "COVERAGE A" of the Policy. Thus, "structure" would include a well, a sewer line, a gazebo, and, as the parties agree, a detached carport.

The word "building" is used more narrowly in the Policy, to mean a structure that contains or encloses property. For example, the Policy specifies at "SECTION I–LOSSES INSURED," "COVERAGE B—PERSONAL PROPERTY" that it does not cover losses to personal property *"contained in a building* caused by rain, snow, sleet, sand or dust" unless the damage to the personal property results from "the direct force of wind or hail damag[ing] the building causing *an opening in a roof or wall."* (Emphasis added.) In this same section, the Policy language states that loss to personal property *"contained in a building"* caused by "Falling objects" only is covered if the *"roof or an exterior wall of the building* is first damaged by a falling object." Clearly, these provisions of the Policy use the word "building" to mean a walled, roofed, enclosed structure—not any structure.

With respect to collapse coverage, the relevant subsection of the "ADDITIONAL COVERAGES" section limits coverage for collapse to "the sudden, entire collapse of a *building* or any part of a *building.*" By using the word "building," instead of "structure," "other structure," or the phrase "the property described in Coverage A," the Policy plainly narrows the coverage for the named peril. Coverage for collapse under the Policy is more limited than coverage for other perils as collapse coverage generally is excluded and only exists as an *exception* to the exclusion, as specifically provided in the "ADDITIONAL COVERAGES" section.[8]

This Policy language interpretation also is supported by dictionary definitions and case law. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed.2002) defines "building" to mean "a constructed edifice designed to stand more or less permanently, covering a space of land, *usually covered by a roof and more or less completely enclosed by walls* and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers)." (Emphasis added.). BLACK'S LAW DICTIONARY (9th ed.1990) defines "building" to mean a "[s]tructure with walls and a roof, esp. a permanent structure." [9]

In *Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 179 A.2d 683 (1962), the Court of Appeals considered whether a swimming pool was subject to the mechanics' lien law, which applied to "every building erected and every building improved." Md.Code (1957), Art. 63, § 1.

---

**8.** It is logical that collapse coverage would exclude un-walled (or partially walled) structures because such structures likely would be less sturdy and more susceptible to collapse.

**9.** PICD relies upon the AMERICAN HERITAGE DICTIONARY (1960), which defines "building" to mean "[s]omething that is built; structure." For the reasons already discussed, the Policy cannot reasonably be construed to use the terms "building" and "structure" synonymously. Moreover, a recent edition of the same dictionary adds to the definition "as for human habitation." AMERICAN HERITAGE DICTIONARY (4th ed.2006).

The Court opined that a building, in its broadest sense, is "an erection intended for use and occupancy as a habitation, or for some purpose of trade, manufacture, ornament, or use, such as a house, store, or a church." 228 Md. at 301, 179 A.2d 683. It also cited the following definition: "a fabric, structure, or edifice, designed for the habitation of men or animals or for the shelter of property." *Id.* (quoting BLACK'S LAW DICTIONARY (4th ed.1951)). It is implicit that a structure designed for human use or habitation or for the "shelter[ing] of property" will have walls.

Courts in other jurisdictions also have construed the word "building" in homeowners insurance policies as being more narrow than the word "structure." *See Bergeron v. State Farm Fire and Cas. Co.*, 145 N.H. 391, 766 A.2d 256, 259 (2000) (concluding that a dam is not a "building," and construing that term in the context of policy language identical to that in the Policy here to mean "something more than anything that is built"); *Arkin v. Fireman's Fund Ins. Co.*, 228 Ga.App. 564, 492 S.E.2d 314, 316 (1997) (holding that a culvert is not a "building" and construing that term to mean " '[s]omething that is built, as for human habitation'; 'a relatively permanent construction having a room and walls, used for living, manufacturing, etc.'; 'structure designed for habitation, shelter, storage, trade, manufacture ... inclosing a space within its walls, and usually, but not necessarily, covered with a roof.' " (quoting dictionary definitions)).

For all these reasons, we conclude that the word "building" as used in the Policy is plain and unambiguous and means a structure that has a roof and walls. Because the carport had no walls and was "separated from the dwelling by clear space," it was an "other structure," but was not a building. As such, it was a covered "dwelling extension" under "COVERAGE A" of the Policy. Pursuant to "SECTION I—LOSSES INSURED," a loss to the carport was covered "except as provided in SECTION I—LOSSES NOT INSURED." The "LOSSES NOT INSURED" section excluded as a covered peril "collapse" except where specifically included as an additional coverage. Subsection 11 of the "ADDITIONAL COV-

ERAGES" section only covers losses to a "building" due to collapse under weight of ice and snow. It follows that the collapse of the carport was not covered under the Policy.

Because State Farm's decision to deny the Taylors' claim was based on a correct legal interpretation of the language of the Policy, it was not arbitrary, capricious, or made without good faith.

**JUDGMENT AFFIRMED.  COSTS TO BE PAID BY THE APPELLANT.**