Circuit Court for Baltimore City
Case No. 24-C-12-002377
Argued: 11/10/14


IN THE COURT OF APPEALS OF MARYLAND


No. 21


September Term, 2014

_____


PEOPLE'S INSURANCE COUNSEL DIVISION


v.


STATE  FARM  FIRE  AND  CASUALTY
COMPANY, et al.

_____




Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,


                    JJ.

_____


PER CURIAM ORDER
Adkins and McDonald, JJ., dissent.

_____

Filed: February 24, 2015

_____

PEOPLE'S INSURANCE COUNSEL    *    IN THE
DIVISION

                                 *    COURT OF APPEALS

         v.                 *    OF MARYLAND

                                   *    No. 21

STATE FARM FIRE AND CASUALTY    *    September Term, 2014
COMPANY, et al.

## PER CURIAM ORDER

The petition for writ of certiorari in the above-entitled case having been granted and argued, it is this 24th day of February, 2015,

ORDERED, by the Court of Appeals of Maryland, that the writ of certiorari be, and it is hereby, dismissed with costs, the petition having been improvidently granted.

                                 /s/ Mary Ellen Barbera
                                         Chief Judge

Judge Adkins and Judge McDonald dissent.

Circuit Court for Baltimore City
Case No.: 24-C-12-002377
Argued: 11/10/2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 21

September Term, 2014

PEOPLE'S INSURANCE COUNSEL
DIVISION

v.

STATE FARM FIRE AND CASUALTY
COMPANY, et al.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Dissenting Opinion by Adkins, J., which
McDonald, J., joins.

Filed: February 24, 2015

Because I think that this Court should act with great restraint when choosing to dismiss a case as improvidently granted, both because it is unfair to the parties and a waste of judicial resources, I dissent.

This appeal arose from an insurance dispute between Gregory and Moira Taylor and their insurer, State Farm Fire and Casualty Company. The Taylors' carport collapsed under the weight of snow during the 2010 blizzard, a severe storm that presumably led to similar property damage to perhaps thousands of other Marylanders. The Taylors challenged State Farm's decision that their homeowner's insurance policy did not cover the damage. They asked the Maryland Insurance Administration ("MIA") for a formal investigation of the claim denial. The MIA denied the complaint,[1] and the Circuit Court for Baltimore City affirmed its decision. On appeal, the Court of Special Appeals affirmed, holding that "[b]ecause State Farm's decision to deny the Taylors' claim was based on a correct legal interpretation of the language of the Policy, it was not arbitrary, capricious, or made without good faith." *People's Ins. Counsel Div. v. State Farm Fire & Cas. Ins. Co.*, 214 Md. App. 438, 457, 76 A.3d 517, 528 (2013).

The People's Insurance Counsel Division[2] petitioned this Court for a writ of certiorari, asking us to answer the following questions:

---

[1] After the MIA's initial determination denying the complaint and concluding that State Farm did not violate any insurance laws, the Taylors requested a hearing, at which time the People's Insurance Counsel Division joined the litigation. The MIA again denied the Taylors' complaint.

[2] The People's Insurance Counsel Division was created in 2005 as part of the Maryland Patients' Access to Quality Health Care Act of 2004, Md. Code (1984, 2009 Repl. Vol.), §§ 6-301–08 of the State Government Article ("SG"). Its duties include: (1)

1. Should this Court reexamine Maryland common law on construing insurance contracts and, recognizing that such contracts are not the product of equal bargaining, hold that terms contained in an insurance policy must be strictly construed against the insurer?

2. Did the Commissioner err in allowing State Farm to deny coverage for damage to a collapsed carport under a policy that insured against "the sudden, entire collapse of a building" based on a restrictive definition of the term "building" that does not appear in the insurance policy or any other written document, and is based solely on oral instructions given to a catastrophe claims adjuster when she was dispatched to handle claims following a severe snowstorm?

After we granted the writ, the parties filed briefs, and we held oral argument on November 10, 2014. A majority of this Court now thinks that grant of *certiorari* was error and dismisses the appeal as improvidently granted. I disagree and would address the merits.

Writing for the Court, Judge McDonald recently described the limited bases upon which we will dismiss a case as improvidently granted:

> On occasion, this Court dismisses a case after briefing and argument on the ground that the petition for writ of certiorari was improvidently granted. In such cases the grant of the petition was a mistake, either because it becomes apparent later that there is truly no issue of public importance in the case or because there is such an issue, but it was not preserved below

evaluating matters pending before the MIA and intervening on behalf of insurance consumers; (2) reviewing rate increases of 10% or more filed with the MIA; and (3) conducting investigations and requesting the MIA to initiate an action to protect the interests of insurance consumers. SG § 6-306.

or the record in the case provides an inadequate basis for rendering useful guidance on that issue.

*Sturdivant v. Md. Dep't. of Health & Mental Hygiene*, 436 Md. 584, 589, 84 A.3d 83, 86 (2014). Thus, to dismiss a case as improvidently granted, we should first conclude that there is no issue of public importance, that the issue was not preserved, or that there is an inadequate record by which to render useful guidance. As I will explain, none of these grounds is present here. First, though, further review of the law on such dismissals is in order.

This is not the first time a judge on this Court has criticized a decision to dismiss as improvidently granted (or "DIG," as it is colloquially termed). In a dissent from one such dismissal, Chief Judge Robert Bell (ret.) opined:

> The Court of Appeals has a responsibility to decide any case properly presented that meets the threshold criteria: presenting issues that it is desirable and in the public interest to decide. That responsibility, as to any issue, may be triggered by such considerations as novelty, complexity, conflicting precedents, impact or importance and the breadth or extent thereof and likelihood of recurrence.
>
> **Once a "cert" worthy case has been accepted on certiorari, there must be a compelling reason not to decide it**; it really must have been improvidently granted.

*Koenig v. State*, 368 Md. 150, 151, 792 A.2d 1124, 1125 (2002) (Bell, C.J., dissenting) (emphasis added). Chief Judge Bell (ret.) brought into focus the injury to the Court's reputation that can arise from a DIG, when he said:

> On the morning that this case was heard, a young lawyer spent the first part of her argument thanking the Court for taking the case that she was arguing as the petitioner. At great length, she spoke of the importance of the issue, the complexity and the

3

need for resolution for the guidance of bench and bar and, again, expressed her gratitude that the Court had granted certiorari to review it. Being of the view that there was no reason for the attorney to thank the Court for doing what it is mandated to do, I interrupted her, offering a simple, but what I thought was, and still think is an, accurate, explanation for doing so: "That is what we do." **Granting certiorari to consider and resolve some novel, difficult and complex issue and broadly relevant issue is indeed what we do. In fact, as the court of last resort in this State, charged, in addition with setting the legal policy, that is, it may be said, the Court's "raison d'etre." In this case, I fear that we have not justified to the people of this State, whom we are mandated to serve, our "raison d'etre."**

*Id.* at 159, 792 A.2d at 1129–30 (emphasis added). I, too, fear that in issuing a DIG after oral argument in this case, we have not justified our "raison d'etre."

Dismissal of a meritorious case as improvidently granted draws attention and criticism from Court observers and commentators. *See, e.g.*, Samuel Estreicher & John E. Sexton, *A Managerial Theory of the Supreme Court's Responsibilities: An Empirical Study,* 59 N.Y.U. L. Rev. 681, 802 (1984) ("Occasionally the Justices dismiss a writ of certiorari as improvidently granted. As recently illustrated by *Gillette Co. v. Miner* [459 U.S. 86, 103 S. Ct. 484, 74 L. Ed. 2d 249 (1982)] and *Westinghouse Electric Corp. v. Vaughn*, [466 U.S. 521, 104 S. Ct. 2163, 80 L. Ed. 2d 531 (1984)] this practice wastes scarce judicial resources and seriously damages the Court's credibility.").[3]

---

[3] Although one "DIG" will not jeopardize a Court's credibility, we must ever remain alert to court practices and decisions that might produce even a smidgen of distrust in our proceedings. *See* Thurgood Marshall, *Supreme Justice: Speeches and Writings*, at 268 (J. Clay Smith, Jr. ed., 2003) ("We must never forget that the only real source of power that we as judges can tap is the respect of the people." (footnote omitted)).

4

Looking to our sister states, I find dissenting judges equally disturbed about the unfairness to the litigants and the injury to the court's reputation that will arise from the majority's decision to dismiss a case as improvidently granted. *See, e.g.*, *In re D.C.*, 157 Ill. 2d 525, 526, 648 N.E.2d 602, 603 (Ill. 1995) (Miller, J., dissenting) ("[D]ismissal of the present appeal can be explained on only one ground: that members of this court who initially voted in favor of review have now concluded that the issue raised here does not warrant our attention. Although we do not lack the authority to dismiss a discretionary appeal because of a change of mind, **we must also be aware that the repeated exercise of the dismissal power on this ground calls into question the adequacy of our procedures for selecting cases for review**." (emphasis added)); *Smith v. State*, 72 S.W.3d 353, 354–55 (Tex. Crim. App. 2002) (Cochran, J., dissenting) ("[T]his Court was fully aware of these procedural problems and record omissions when we granted the State's petition. We knew that granting the petition would require us to cut through a Gordian knot, and now we have shrunk from that task. **Our dismissal is not fair to the litigants, who have spent countless hours preparing their briefs, researching the law, and presenting cogent written arguments to this Court**." (emphasis added)); *Israel Pagan Estate v. Capital Thrift & Loan*, 771 P.2d 1032, 1033 (Utah 1989) (Howe, J., dissenting) ("I believe that dismissing the writ as having been improvidently granted and refusing to reach and rule on the merits of the case **are grossly unfair to the parties at this juncture**. There has been no change in circumstances since the writ was granted, nor has the basis upon which review was permitted been found to be nonexistent." (emphasis added)). All these reasons militate against dismissal in this case.

5

We should carefully abide by a fair and consistent standard in making decisions to dismiss writs as improvidently granted. *Sturdivant* was clear and straightforward in its enunciation of the standard. To dismiss this case as improvidently granted, then, we must first conclude that: (1) there is no issue of public importance presented; (2) the issue was not preserved; or (3) there is an inadequate record by which to provide useful guidance. *See Sturdivant*, 436 Md. at 589, 84 A.3d at 86. This case does not fit any of these criteria.

The public importance of the issues presented in this case is clear. Interpretation of this policy language would impact thousands of Marylanders with carports or similar structures. Further, with this dismissal, both insureds and insurance companies will be denied the benefit of a definitive ruling from this Court interpreting this widely-used contract and assessing what constitutes a failure to act in good faith within the meaning of Md. Code (1995, 2011 Repl. Vol.), § 27-303 and § 27-1001 of the Insurance Article ("IN"). A decision on the merits affords an opportunity to refine our law establishing the rules regarding construction of insurance policies, especially when an ambiguity is present.

Regarding *Sturdivant*'s third criterion, the adequacy of the record before this Court cannot be assailed. The MIA proceedings included extensive evidence-gathering and testimony. The parties provided us with extensive documentation of the insurance policy, the claims dispute, and the proceedings below.

I can only speculate that the Court now dismisses on preservation grounds. Yet, I see no procedural defect in this appeal. In February 2010, a blizzard caused the Taylors' carport to collapse from the weight of snow. When State Farm denied them coverage for damage to the carport, they filed a complaint with the MIA. Throughout this process, the

6

Taylors and People's Insurance Counsel Division contended that the policy should include coverage for the carport's collapse. They consistently asserted that State Farm arbitrarily made the policy determination to exclude coverage for carports only in the immediate wake of the 2010 blizzard. State Farm offered nothing to contradict the assertion, and indeed, its own employees and experts testified that they were not previously aware of this policy.

State Farm argues instead that the Taylors incorrectly brought their claim under IN § 27-303—which addresses unfair claim settlement practices—under which the Taylors had an administrative remedy, but had to prove that State Farm failed to act in good faith. They—and amici—argue that IN § 27-1001 of the Insurance Article was the proper vehicle under which to challenge State Farm's interpretation of their policy. Perhaps the Taylors would have fared better under IN § 27-1001, where they could recover damages for a mere breach of contract under subsection (e)(2).[4] But they still have the right to pursue a claim

---

[4] In pertinent part, Md. Code (1995, 2011 Repl. Vol.), § 27-1001 of the Insurance Article reads:

> (e)(2) With respect to the determination of damages under paragraph (1)(i)5 of this subsection:
>> (i) if the Administration finds that the insurer breached an obligation to the insured, the Administration shall determine the obligation of the insurer to pay:
>>> 1. actual damages, which actual damages may not exceed the limits of any applicable policy; and
>>> 2. interest on all actual damages incurred by the insured[; and]
>> (ii) if the Administration also finds that the insurer failed to act in good faith, the Administration shall also determine the obligation of the insurer to pay:

under IN § 27-303, so long as they can prove State Farm engaged in an unfair settlement practice, which in this case would mean they failed "to act in good faith, as defined under § 27-1001." IN § 27-303(9). Even with the more limited scope of such an administrative claim, the Court should go forward with its decision to grant *certiorari*—we did not grant the writ *only* to decide a claim under the broader IN § 27-1001.

Another procedural roadblock thrown up by State Farm is that the Taylors did not argue, at the Circuit Court level, as they do here, that Maryland's law on contract interpretation involving insurance policies should be modified so that the terms of the policy "should be strictly construed against the insurer." This may be so, although Petitioner made the argument to the Court of Special Appeals. But any failure to preserve this issue would have minimal impact on our decision. The absence of the broad issue of contract interpretation does not make the important and far-reaching issues in this case disappear. No one questions that Maryland abides by the "construe against the drafter" principle of contract interpretation. *See Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508–09, 667 A.2d 617, 619 (1995). And the insurance company is always the drafter. Although the rule advocated by Petitioner and our existing rule may have subtle distinctions, the case can certainly be resolved using our well-settled rules of contract construction. So,

---

1. expenses and litigation costs incurred by the insured, including reasonable attorney's fees, in pursuing recovery under this subtitle; and
2. interest on all expenses and litigation costs incurred by the insured[.]

8

regardless of whether the first issue is preserved, we should resolve the question of whether we should reverse the MIA's decision that State Farm did not act arbitrarily in denying the claim under IN § 27-303(2) or (9). If we hold that the MIA erred, then the statute provides a remedy under IN § 27-301 and IN § 27-303. If the MIA acted reasonably in finding that State Farm's actions were not arbitrary, then this section does not provide the Taylors or People's Insurance Counsel with the administrative remedy they sought. By dismissing this case as improvidently granted, we leave this issue unresolved.

In the absence of any of the three reasons we have previously offered for dismissing a case as improvidently granted, we should consider and rule upon the merits of this case. As Chief Judge Bell (ret.) said, in dissenting to another DIG, "[t]he Court was not misled concerning the case by information supplied or withheld. Nor could there be any mistaken assumptions about the case. It is not enough to want to avoid an issue, squarely presented." *Jacobson v. Sol Levinson & Bros.*, 371 Md. 442, 449, 809 A.2d 691, 695 (2002) (Bell, C.J., dissenting).

Our decision to avoid these questions does nothing to clarify or advance the law. And it gives short shrift to the litigants before us after they have performed the onerous work of preparing briefs and record extracts, as well as preparing and conducting oral arguments. We owe the parties and the people of the State due consideration of the issues properly presented. Here, unfortunately, the litigants and public are left in the dark again, in a case that could impact thousands of Maryland homeowners.

9

Chief Judge Bell (ret.) wrote in *Koenig,* "[i]n this case, I fear that we have not justified to the people of this State, whom we are mandated to serve, our 'raison d'etre.'" 368 Md. at 159, 792 A.2d at 1130. I fear the Court repeats this mistake today.

Judge McDonald has authorized me to state that he joins in the views expressed in this dissenting opinion.

Circuit Court for Baltimore City
Case No.:  24-C-12-002377
Argued:  11/10/2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 21

September Term, 2014

PEOPLE'S INSURANCE COUNSEL
DIVISION

v.

STATE FARM FIRE AND CASUALTY
COMPANY, et al.

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Dissenting Opinion by McDonald, J.

Filed: February 24, 2015

Sometimes we make a mistake when we grant a petition for certiorari. When we do, we should admit it and correct it, even if the correction is couched in passive voice and a five-syllable adverb ("dismissed as improvidently granted"). But, for the reasons that Judge Adkins explains well, that is not this case. It is "desirable and in the public interest" that we resolve the issue of how an insurance contract such as the one in this case should be construed under Maryland common law.

As an aside, I note that the five-vote majority in favor of dismissing this petition is the minimum that ought to be necessary for dismissing a petition. An explanation: Under the longstanding practice of this Court, consistent with the statute that sets forth our certiorari jurisdiction, a petition for certiorari is granted if three judges vote to do so (even if four judges do not favor granting the petition). *See* Inner Workings of the Court of Appeals of Maryland, <http://www.mdcourts.gov/coappeals/coaoverview.html>.[1] If a petition, once so granted, could be immediately dismissed on an identical 4-3 vote, it would be at odds with the three-vote standard for granting petitions and with the statute that caps the requisite number of votes at three. *See* Maryland Code, Courts & Judicial Proceedings Article, §12-203 ("The Court of Appeals may by rule provide for the number of its judges who must concur to grant the writ of certiorari in any case, *but that number may not exceed*

_____

[1] If only five members of the Court are available to consider a petition, the Court has required only two affirmative votes to grant the petition. Glenn T. Harrell, Jr., *To Certiorari and Beyond* (January 18, 2012) at p.3 n.4.

*three"*) (emphasis added).   The upshot is that we should not dismiss a petition as improvidently granted unless we do so by a super-majority vote of at least 5-2.[2]

---

[2]A similar question has arisen, from time to time, in the United States Supreme Court where the nine justices apply what is known as the "Rule of Four" to grant petitions for certiorari – *i.e.*, a petition is granted if at least four of the nine justices concur in the grant.  On occasion, that Court has dismissed a case, by a 5-4 vote, on the ground that the petition was "improvidently granted."  It has been pointed out that such an action is inconsistent with the "Rule of Four." *United States v. Shannon*, 342 U.S. 288, 298 (1952) (Douglas, J. dissenting) ("If four can grant and the opposing five dismiss, then the four cannot get a decision of the case on the merits.  The integrity of the four-vote rule on certiorari would then be impaired.*"*); *Ferguson v. Moore-McCormack Lines*, 352 U.S. 521, 560 (1957) (Harlan, J., concurring and dissenting) ("permitting the … writ to be thus undone would undermine the whole philosophy of the 'rule of four'"); R. Revesz & P. Karlan, *Nonmajority Rules and the Supreme Court*, 136 U. Penn. L. Rev. 1067, 1082-95 (1988).  Nevertheless, the Supreme Court has sometimes dismissed a case on such a vote.

There is an important distinction between our Court and the Supreme Court here.  When the Supreme Court dismisses a case on the ground that the petition for certiorari was improvidently granted on a 5-4 vote, in contradiction of the "Rule of Four," it is simply violating its own informal convention which, though referred to as a "rule," has never been formally adopted.  *See New York v. Uplinger*, 467 U.S. 246, 251 (1984) (Stevens, J., concurring) ("the Rule of Four is a valuable, though not immutable, device for deciding when a case must be argued").  By contrast, the statute that sets forth our certiorari jurisdiction prohibits us from requiring more than three affirmative votes to grant a writ of certiorari to review a case on the merits.