*Linda Connors, Individually etc., v. Government Employees Insurance Co.*, No. 45, September Term, 2014

**Insurance—Policy Interpretation—Uninsured/Underinsured Motorist Provision— Per Person/Per Occurrence Amount "Caps"**

The uninsured/underinsured motorist provision of an insurance policy in this case is not ambiguous where it provides that the "per occurrence" policy limits are "subject to" the "per person" policy limits. In calculating the proceeds due the insureds under the subject policy, amounts contributed by the tortfeasor are deducted from the "per occurrence" "cap," not the "per person" cap.

Circuit Court for Montgomery County
Case No. 341803-V
Argued: 9 February 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 45

September Term, 2014

---

LINDA CONNORS, INDIVIDUALLY
ETC.

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.

---

Filed: April 17, 2015

The parties in this appeal—an insurance company and two of its insureds—disagree as to how to calculate the proceeds due to the insureds pursuant to the underinsured motorist provisions of their policy. The insureds argue that the express terms of the insurance contract mandate that the insurance company pay them $300,000. The insurance company argues instead that its insureds are owed only $100,000. To settle this dispute, we are called upon to interpret the subject policy. In so doing, we conclude that the policy is not ambiguous. We agree with the insurance company that the terms of the policy mandate that the insureds are owed $100,000.

## I. STATEMENT OF FACTS: THE ACCIDENT

The facts are not in dispute. On 14 August 2009, Robert and Linda Connors (collectively, the "Connors," the "Plaintiffs," or the "Petitioners"), husband and wife, took an ill-fated stroll in their Waldorf neighborhood. A motor vehicle operated by Adam Pond ("Pond"), while backing out of a residential driveway at 3269 Captain Dament Drive, struck the Connors. Plaintiffs alleged, in their subsequent Complaint, that, as she was struck, Linda Connors hit the vehicle with her hand and screamed, causing it to come to a stop. Pond saw allegedly Linda screaming on the ground and nonetheless resumed moving the vehicle again, backing over Robert Connors, as he attempted to flee the scene.

Both of the Connors sustained injuries. Robert sustained serious injuries to his head, including a traumatic brain injury, as well as injuries to his neck, body, and limbs. He was taken to Holy Cross Hospital for treatment of his injuries and transferred later to

the Crofton Rehabilitation Center, where he died on 31 January 2011.[1] Linda sustained injuries to her neck, back, leg, and arm, and also claimed emotional injuries incurred as a result of watching her husband being run-over.

At the time of the accident, the Connors together owned a vehicle insured by Government Employees Insurance Co. ("GEICO") under a Maryland Family Automobile Insurance Policy numbered 0377-86-55-06 (the "GEICO policy" or the "policy"). GEICO concedes that both Robert and Linda Connors are "insureds" under the policy. The terms of the policy included underinsured motorist ("UIM") coverage of $300,000 per person/$300,000 per accident. Pond maintained automobile liability insurance with Allstate Insurance Co. ("Allstate"), limited to $100,000 per person/$300,000 per accident. The record does not divulge the exact monetary amount of damages sustained by Robert and Linda Connors, although GEICO concedes that the total amount exceeds all available and collectable insurance. The Connors settled with Allstate for the limits of Pond's liability insurance after GEICO waived its rights of subrogation against Pond. Pursuant to this settlement, Allstate paid $100,000 to Robert (before he died) and $100,000 to Linda.

Each of the Connors then submitted claims for underinsured motorist coverage to GEICO under the terms of their policy. The Connors sought $300,000 total from

---

[1] Petitioners allege that Robert Connors' death was the result of his injuries sustained in the accident. No discovery was undertaken as to the details or cause of Robert's death. Nonetheless, GEICO (the Connors' carrier) concedes that the injuries sustained by Robert were such that the "value" of his claim likely far exceeded the available underinsured motorist limits of the Connors' policy under any imagined interpretation of it.

2

GEICO. GEICO agreed that the Connors were owed a total of $100,000 under the terms of the policy, but disputed the additional $200,000 claimed by them. Pursuant to an agreement reached between the parties, GEICO paid the Connors the $100,000 it agreed was owed them, with the understanding that the Connors could proceed with a Complaint for Declaratory Judgment as to the $200,000 in dispute.

## II. STATEMENT OF THE CASE: THE LAWSUIT

On 16 December 2010,[2] Robert and Linda Connors filed in the Circuit Court for Montgomery County a Complaint for Declaratory Judgment against GEICO, together with a motion for summary judgment. GEICO filed initially a motion to dismiss, which was denied summarily. GEICO filed then an answer, a cross-motion for summary judgment, and opposition to the Connors' motion for summary judgment.[3]

The Circuit Court heard on 5 May 2011 arguments from all parties and ruled from the bench as to the pending motions and the Complaint. The trial judge agreed with GEICO's interpretation of the policy, and determined that the Plaintiffs should recover only $100,000 from GEICO.

---

[2] Before the declaratory judgment action, the Connors filed a complaint with the Maryland Insurance Administration ("MIA") against GEICO, pursuant to Maryland Code (1997, 2011 Repl. Vol.), Insurance Article, § 27-1001, alleging that GEICO failed to act in good faith in addressing their claim. On 22 June 2010, the MIA issued a decision in favor of GEICO, finding that GEICO did not fail to act in good faith in determining the value of the claim. The Connors did not seek judicial review of the MIA's decision.

[3] Following the death of Robert Connors, the Plaintiffs filed on 15 March 2011 a Notice of Substitution of Party naming Linda Connors as Personal Representative of the Estate of Robert Connors. We shall continue to refer to the "Connors," "Plaintiffs," and "Petitioners" in the plural, as two separate claims for uninsured motorist benefits are asserted.

In an Order entered on 3 June 2011, the trial judge granted GEICO's cross-motion for summary judgment and denied the Connors' motion for summary judgment. In a Declaratory Judgment entered on 6 June 2011, the trial judge determined that (1) the Plaintiffs were insured under the GEICO policy and were entitled to collect UIM benefits under the policy; (2) the GEICO policy was not ambiguous and GEICO was obligated under the policy to pay the Connors $100,000 together in satisfaction of their claims; and (3) GEICO's remaining UIM obligation:

> is calculated by taking its $300,000 "per accident" limit under the GEICO Policy and subtracting all amounts received by Robert and Linda Connors that exhausted the tortfeasor's liability limits, which in this instance was $200,000. GEICO's remaining UIM obligation to Robert and Linda Connors is to fill the "gap" between what Robert and Linda Connors could have recovered from the tortfeasor had the tortfeasor maintained identical liability coverage to the coverage Robert Connors purchased under the GEICO Policy. That "gap" is $100,000 which, as noted, has been paid.

On 9 June 2011, the Petitioners filed a Notice of Appeal. The Court of Special Appeals, in a reported opinion, affirmed the judgment of the trial court. *Connors v. Government Employees Insurance Co.*, 216 Md. App. 418, 421, 88 A.3d 162, 164 (2014).

Petitioners filed a Petition for Writ of Certiorari, which we granted on 18 July 2014. In their Petition, they asked us to consider the following question solely:

> Do the underinsured motorist provisions of GEICO's insurance contract provide the Petitioners, Linda Connors Individually and Linda Connors as Personal Representative of the Estate of Robert Connors, a limit of underinsured coverage of $300,000 each, subject to an aggregate payment to all Petitioners' claims by GEICO not to exceed $300,000?

*Connors v. Government Employees Insurance Co.*, 439 Md. 327, 96 A.3d 143 (2014).

4

## III. STANDARD OF REVIEW

When we consider a declaratory judgment in tandem with the grant of summary judgment, and no material facts are in dispute, we consider "whether that declaration was correct as a matter of law." *Springer v. Erie Ins. Exchange*, 439 Md. 142, 155–56, 94 A.3d 75, 83 (2014) (internal quotations omitted); *see Catalyst Health Solutions, Inc. v. Magill*, 414 Md. 457, 471, 995 A.2d 960, 968 (2010). Whether the trial court granted properly summary judgment is a question of law, which we review without deference. *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 541–42, 914 A.2d 770, 778–79 (2007); *see Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 450, 910 A.2d 1072, 1079 (2006).

## IV. DISCUSSION

### A. Relevant Statutory Scheme

Maryland law requires every motor vehicle insurance policy issued in Maryland to contain minimum uninsured motorist coverage.[4] Maryland Code (1997, 2011 Repl. Vol.), Insurance Article, § 19-509; *see Waters v. U.S. Fidelity & Guaranty Co.*, 328 Md. 700, 710, 616 A.2d 884, 888 (1992). In 1981, the UIM statutory scheme was amended to allow insureds to contract for more than the statutory minimum amount of coverage, should they desire to do so. 1981 Md. Laws, Chap. 510; *see Hoffman v. United Services.*

---

[4] The terms "uninsured motorist" and "underinsured motorist" are used often interchangeably. "Uninsured motorist" coverage describes when an insured is involved in an accident with a motorist who does not carry any liability insurance coverage whatsoever. "Underinsured motorist" coverage describes when an insured is involved in an accident with a motorist who carries liability insurance, but whose insurance coverage is less than the insured's underinsured motorist coverage.

*Auto. Ass'n*, 309 Md. 167, 178, 522 A.2d 1320, 1325 (1987). At the time of the Connors' accident,[5] each Maryland motor vehicle liability policy had to contain a minimum of $20,000 coverage for injury or death of any one person in an accident, a minimum of $40,000 in coverage for injury or death of two or more people in an accident, and a minimum of $15,000 in coverage for property damage resulting from any one accident. Maryland Code (1977, 2009 Repl. Vol.), Transportation Article II, § 17-103.

The general purpose of Maryland's UIM statutory scheme is to "provide minimum protection for individuals injured by uninsured motorists and should be liberally construed to ensure that innocent victims of motor vehicle collisions are compensated for their injuries." *Brethern Mut. Ins. Co. v. Buckley*, 437 Md. 332, 347, 86 A.3d 665, 673 (2014) (citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 612, 925 A.2d 636, 644 (2007)). Specifically, Maryland's UIM scheme is designed to "provide an injured insured with resources equal to those which would have been available had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company." *Waters*, 328 Md. at 714, 616 A.2d at 890. Maryland is, accordingly, a "gap theory" state—the injured insureds may recover the difference between their UIM coverage and money received from the

---

[5] The statute has been amended since to require that each motor vehicle liability policy contain a minimum of $30,000 in coverage for injury or death of any one person in an accident and $60,000 in coverage for injury or death of two or more people in an accident. 2010 Md. Laws, Chap. 441, at 2686–87.

6

tortfeasor.[6]  The uninsured motorist statutory scheme and the policy in effect between the

parties in this case is consistent with Maryland's identity as a gap theory state.[7]

*B.  The Connors' Policy*

The relevant portions of the GEICO policy are:

SECTION IV—UNINSURED[8] MOTORISTS COVERAGE

. . .

---

[6] This stands in contrast to the "excess theory" of recovery, where a tortfeasor is considered underinsured "when the injured party's damages exceed the tortfeasor's liability coverage." *Waters v. U.S. Fidelity & Guar. Co.*, 328 Md. 700, 712 n.5, 616 A.2d 884, 889 n.5 (1992).

[7] The Connors concede, as they must, that Maryland is a gap theory state, but argue that the trial court and the Court of Special Appeals "misapplied the 'gap theory'" in calculating the UIM benefits owed to the Petitioners as the Petitioners contracted allegedly "for more coverage than the minimum available under the gap theory."  GEICO argues that the insurance policy and statutory scheme discussed above is a reflection of Maryland's nature as a gap theory state.  We agree with GEICO—while the Connors may contract for more than the statutorily-proscribed minimum coverage amounts, *see Hoffman v. United Servs. Auto. Ass'n*, 309 Md. 167, 178, 522 A.2d 1320, 1325 (1987), in this case the policy states clearly that the total recoverable amount by the Connors is subject to the "per occurrence" "cap" of $300,000.

[8] *See supra* note 4.  The policy defines an "uninsured motor vehicle" as including underinsured motor vehicles, i.e., those whose

> use has resulted in the **bodily injury** or death of an **insured**, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to **bodily injury** or death:
>> (i) [i]s less than the amount of coverage provided to the **insured** under this Uninsured Motorists coverage; or
>> (ii) [h]as been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the coverage provided under this Uninsured Motorists coverage.

**LOSSES WE WILL PAY**

We will pay damages for *bodily injury*[9] and *property damage* caused by an accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* arising out of the ownership, maintenance or use of that vehicle.

. . .

**LIMITS OF LIABILITY**

Regardless of the number of *insureds*, autos or *trailers* to which this policy applies:

1. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of service, due to *bodily injury* sustained by one person as the result of one accident. [Hereinafter, we refer to this provision as "subsection (1)."]

2. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each accident" is, *subject to the above provision respecting each person*, the total limit of our liability for all such damages including damages for care and loss of services, due to *bodily injury* sustained by two or more persons as the result of one accident. [Hereinafter, we refer to this provision as "subsection (2)."]

. . .

4. . . .

The amount payable under this coverage will be reduced by all amounts:

(a) Paid by or for all persons or organizations liable for the injury;

(b) Paid under the Bodily Injury and Property Damage coverages of this policy;

---

[9] This section of the policy defines "bodily injury" as "bodily injury, sickness, or disease, including death, sustained by *you*, *your relatives* or any other person *occupying* an *insured auto* with *your* consent."

8

> (c) Recovered under any workers' or workmen's compensation law, disability benefits law or any similar law, exclusive of non-occupational disability benefits; or
>
> (d) Paid under a property insurance policy.
>
> [Hereinafter, we refer to this provision as "subsection (4)."]

(emphasis added in subsection (2)). Finally, the "DEFINITIONS" portion of "SECTION IV—UNINSURED MOTORISTS COVERAGE" includes the following statement in the middle of its definition of an uninsured motor vehicle:

> The limit of our liability is the amount of Uninsured Motorists coverage as stated in the Declarations less the amount paid to the **insured** that exhausts any applicable liability insurance policies, bonds, and securities on behalf of any person who may be held liable for the **bodily injury** or death of the **insured**.[10]

---

[10] This provision echoes a portion of the Insurance Article of the Maryland Code. Maryland Code (1997, 2011 Repl. Vol.), Insurance Article, § 19-509(g) provides:

> *Limit of insurer liability*.—The limit of liability for an insurer that provides uninsured motorist coverage under this section is the amount of that coverage less the amount paid to the insured, that exhausts any applicable liability insurance policies, bonds, and securities, on behalf of any person that may be held liable for the bodily injuries or death of the insured.

Parties to a contract "are presumed to contract mindful of the existing law and [] all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 344, 731 A.2d 441, 447 (1999). When language in an insurance policy is nearly identical to the language contained in statutory text, it is reasonable to infer that the insurer intended the same meaning given to the statute. *State Farm Mut. Auto. Ins. Co. v. DeHaan*, 393 Md. 163, 194, 900 A.2d 208, 226 (2006).

9

The parties have provided us with various formulas by which to calculate the benefits due to the Connors under the terms of their policy. By our count, the parties' disagreement centers on two alleged ambiguities in the contract. First, the parties dispute the proper interplay between subsections (1) and (2). Second, the parties appear to dispute (but not as vigorously) the point at which subsection (4) comes into play.

The Connors suggest the following interpretation and calculation: The Connors begin their analysis with subsection (1), which mandates a $300,000 limit for "each person" resulting from "one accident." The Connors suggest that the "subject to" language in subsection (2) makes the $300,000 limit governing "each accident" subservient to the $300,000 limit for "each person" from subsection (1). If subsection (2) is subject to subsection (1), then "[e]ach individual claimant's recovery is limited to the per-person limits, with the maximum payout for the occurrence limited to the per-occurrence limit." The Connors summarize their position: "[The policy] states when more than one person is injured it will pay up to the per person limit, less payments to that person, with a cap of $300,000 for all payments from GEICO for one accident."[11] Accordingly, the Connors argue that the benefits owed should be calculated as follows:

---

[11] The Maryland Association for Justice, Inc. (the "MAJ"), submitted an *amicus curiae* brief in support of the Connors. The MAJ argues similarly that subsection (2) is subject to subsection (1), meaning that "to analyze what is owed to multiple injured insureds, each claim must be analyzed individually. No individual can recover more than the per-person limits set forth in the declarations, and the total recovery is limited to the per-occurrence limit set forth in the declarations."

Estate of Robert Connors:
$300,000     [GEICO's per person UIM coverage]
-$100,000    [Payment from Allstate]
= $200,000   [GEICO's remaining coverage]

Linda Connors:
$300,000     [GEICO's per person UIM coverage]
-$100,000    [Payment from Allstate]
= $200,000   [GEICO's remaining coverage]

$200,000 owed to the Estate of Robert Connors + $200,000 owed to Linda Connors = $400,000 total owed

$400,000 is adjusted to $300,000 pursuant to the $300,000 per accident cap from subsection (2).

Finally,
$300,000
-$100,000    [Amount GEICO already agreed to pay]
= $200,000 still owed by GEICO

GEICO suggests a much different method of calculation is appropriate. GEICO asserts that "subsection (1) simply is not the relevant provision to analyze when more than one person or insured is injured in one accident," and so begins instead its analysis with subsection (2). As the "per occurrence" limit of subsection (2) is $300,000 in this case, GEICO argues that "[f]rom this $300,000 limit, the GEICO policy dictates that the amount is reduced by all amounts paid by the tortfeasor, which in this instance is $200,000 . . . ." Accordingly, GEICO argues that the benefits owed should be calculated as follows:

The amount of both Connors' individual injuries (which GEICO concedes exceeds the policy limits) is adjusted to $300,000 pursuant to the $300,000 per accident cap.

$300,000
-$200,000    [Payments from Allstate to both Connors]

11

= $100,000   [Amount GEICO already agreed to pay]

The trial court and the Court of Special Appeals agreed with GEICO's method of calculating the UIM benefits due to the Connors pursuant to the policy.

### D. Our Interpretation

As a general rule, we interpret the language of an insurance policy with the same principles and rules of construction that we use to interpret other contracts. *See DeHaan*, 393 Md. at 193, 900 A.2d at 225–26; *Megonnell v. United States Auto Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772 (2002); *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 537 (2000). Like any other contract, an insurance contract is "measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). We give the words of insurance contracts their customary, ordinary, and accepted meaning, as determined by the fictional "reasonably prudent lay person." *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 660, 843 A.2d 78, 89 (2004). When contractual language is plain and unambiguous, we enforce the terms of the contract as a matter of law. *Calomoris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1998); *Pacific Indem. Co.*, 302 Md. at 389, 488 A.2d at 489. When interpreting contracts,

> the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.

*Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700, 710 (2007). If the language of the contract is ambiguous, we may turn to extrinsic evidence to determine the intent of the parties. *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459, 889 A.2d 387, 393 (2006); *Pacific Indem. Co.*, 302 Md. at 389, 488 A.2d at 489. A policy term is considered "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Cole*, 359 Md. at 305–06, 753 A.2d at 537.

Some of our sister states maintain that insurance policies should, as a matter of course, be construed against the insurer. *Megonnell*, 368 Md. at 655, 796 A.2d at 771. Maryland does not follow this rule.[12] *Id.* Instead, in the event that an insurance policy

---

[12] The Connors argued in their brief that Maryland should adopt the "majority view that ambiguous language in an insurance contract shall be strictly construed against the insurer and liberally construed in favor of the insured" and asked us to "take the opportunity to make Maryland law consistent with the modern majority view." As discussed above, we conclude that the subject policy in this case is not ambiguous. Even if it was, this case would not be the correct vehicle to consider such a modification of Maryland's common law.

In their petition for writ of certiorari, the Connors asked us only to interpret their contract. The Connors did not ask us, for example, to re-examine Maryland common law and recognize that terms contained in an insurance contract are not the product of equal bargaining, but instead must be construed strictly against the insurer. GEICO recognized rightly in their brief that the Connors failed to raise this larger, more existential question before the Court of Special Appeals or in their Petition for Writ of Certiorari. *See* Maryland Rule 8-131(b) ("Unless provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . , the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. . . ."); *Worsham v. Greenfield*, 435 Md. 349, 355 n.4, 78 A.3d 358, 362 n.4 (2013); *Casey v. Mayor of Rockville*, 400 Md. 259, 322–24, 929 A.2d 74, 112–13 (2007); *Giddins v. State*, 393 Md. 1, 17 n.6, 899 A.2d 139, 148 n.6 (2006).

With each exchange of briefs here, the parties focused more intensely on *People's Insurance Counsel Div. v. State Farm Fire & Casualty Co.*, 436 Md. 501, 83 A.3d 779 (2014), where we granted certiorari to consider the following question, among others:

(Continued…)

13

"[s]hould this Court reexamine Maryland common law on construing insurance contracts and, recognizing that such contracts are not the product of equal bargaining, hold that terms contained in an insurance policy must be strictly construed against the insurer?" *Id.* In their initial brief, the Connors provided us with a list of states (attached originally to the Petitioner's Brief in *People's Insurance*) following purportedly the rule that insurance policies are contracts of adhesion and are to be construed strictly against the insurer. GEICO, in its brief, argues that, if the Connors had wanted us to re-examine Maryland common law regarding whether insurance policies should be construed strictly against the insurer, the Connors should have raised the issue before the Court of Special Appeals or in their petition for certiorari, as did the petitioners in *People's Insurance*.

The Connors, in their reply brief, concede that they only argued the issue in their briefs after we granted certiorari in *People's Insurance*. They note, however, that Rule 8-131(a) permits appellate courts to consider unpreserved issues "if necessary or desirable to guide the trial court or to avoid the expenses and delay of another appeal." The Connors argue further that the fact that we granted certiorari in *People's Insurance* "indicat[es] [we] intend[] to consider whether the archaic rule established one hundred and seventy-seven (177) years ago should be maintained." Finally, the Connors argue that no party is prejudiced by raising this issue on appeal as GEICO was afforded the opportunity to brief fully its response to this argument in its reply to the *amicus curiae* brief filed by the Maryland Association for Justice, Inc. (the "MAJ"). The MAJ argued first that Maryland should adopt the view that a consumer insurance policy should be construed liberally in favor of the insured and construed strictly against the insurer, and second that judicial action is required to modify the "insurer-friendly approach" to construing insurance policies currently embodied in Maryland common law.

GEICO responded that the MAJ's *amicus curiae* "should not be permitted to otherwise revive an issue that has not otherwise been preserved for review." GEICO advanced further a host of arguments for why we should reject the arguments advanced by the MAJ and the Connors encouraging us to re-examine Maryland common law. GEICO argued that (1) *stare decisis* dictates that we construe insurance contracts in the same manner as other contracts; (2) Maryland already construes strictly ambiguous policy terms against insurers as the drafters; and (3) the MAJ overstates the "majority" rule from other jurisdictions. GEICO then provided us with amici briefs from *People's Insurance* as well as charts describing the interpretation methodologies of various other states.

By per curiam order dated 24 February 2015, we dismissed (but not without quarrel) the writ of certiorari in *People's Insurance* as granted improvidently. *People's Insurance Counsel Div. v. State Farm Fire & Cas. Co.*, ___ Md. ___, ___ A.3d ___ (2014) (No. 21, September Term, 2014); *see id.* at 3–13 (Adkins, J., dissenting); *id.* at 14–16 (McDonald, J., dissenting). Generally, we dismiss a case after briefing and argument on the ground that the petition for writ of certiorari was granted improvidently

(Continued…)

14

contains ambiguous language, we construe that language "liberally in favor of the insured and against the insurer *as drafter of the instrument*." *Megonnell*, 368 Md. at 655, 796 A.2d at 772 (emphasis in original) (internal quotations omitted); *see Clendenin Bros.*, 390 Md. at 459–60, 889 A.2d at 394; *Collier v. MD-Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537, 539 (1992); *see also Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 98 n.10, 699 A.2d 482, 494 n.10 (1977) ("Maryland courts first ascertain the intent of the parties from the policy as a whole, considering extrinsic and parol evidence to construe any ambiguity. Only if either no extrinsic or parol evidence is introduced or if an ambiguity still remains after the examination of extrinsic evidence will Maryland courts construe a policy against an insurer." (citations omitted)).

In this case, the policy is not ambiguous and therefore we may enforce the terms of the policy as a matter of law. For ease of reference, we reproduce here subsections (1) and (2) as our point of departure for our explication of why there is no ambiguity:

> 1. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including those

---

(…continued)

in cases where the grant was (or was proven to be) a mistake, "either because it becomes apparent later that there is truly no issue of public importance in the case or because there is such an issue, but it was not preserved below or the record in the case provides an inadequate basis for rendering useful guidance on that issue." *Sturdivant v. Maryland Dep't. of Health & Mental Hygiene*, 436 Md. 584, 589, 84 A.3d. 83, 86 (2014).

We chose not to re-examine Maryland common law in *People's Insurance* when we dismissed the writ of certiorari as granted improvidently. We choose not to re-examine Maryland common law in this case because the Connors did not raise the issue before the Court of Special Appeals nor in their petition for writ of certiorari. Finally, and most importantly, consideration of this question is not "necessary" here as the parties' insurance contract is not ambiguous.

15

for care or loss of service, due to **bodily injury** sustained by one person as the result of one accident.

2. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each accident" is, *subject to the above provision respecting each person*, the total limit of our liability for all such damages including damages for care and loss of services, due to **bodily injury** sustained by two or more persons as the result of one accident.

(emphasis added in subsection (2)).

Subsection (2) addresses the "limit of liability" in situations where "bodily injury" was "sustained by two or more persons as the result of one accident." Subsection (2) refers, however, to subsection (1) by its own terms and ensures therefore that something about subsection (1) impacts the meaning of subsection (2). The Connors contend that the two commas "convert the statement into the qualifying clause." The Connors argue further that the "plain language of the policy makes clear that the 'per occurrence' provision is subject to the 'per person' provision. The 'per occurrence' provision is *subject to* what is in between the commas, which makes the 'per person' provision the main clause dictating the calculation of coverage of UIM benefits." GEICO, on the other hand, accuses the Connors of "reading out" the comma between "is" and "subject," which, in GEICO's view, "converts the 'subject to the above provisions respecting each person' into a qualifying clause that makes it 'subservient to' the per occurrence limit, not the other way around." Practically speaking, GEICO argues that the "subject to" language "simply restricts an individual insured, involved in an accident where the 'per

16

occurrence' limit is invoked, from individually recovering ***more than*** the 'per person'

limits." (emphasis in original).

Despite spending numerous pages debating the fine points of grammar and the

proper labels to give to various clauses,[13] the parties agree practically on the interplay

---

[13] The parties treat the Court to a grammar lesson in constructing the policy. Peppered throughout the briefs are arguments about whether the "subject to" clause is qualifying or modifying, restrictive or nonrestrictive, subservient to something else or not.

The parties direct our attention to two statutory interpretation cases in which we discussed the nature of qualifying clauses and the impact of commas. In *Kane v. Board of Appeals*, 390 Md. 145, 162, 887 A.2d 1060, 1070 (2005), we analyzed the effect of the qualifying clause and commas in the following provision of the Prince George's County Code: "any order or notice issued pursuant to this Subtitle shall be served upon the owner, operator, occupant, agent or other person responsible for the condition or violation . . . ." We recognized that qualifying clauses are ordinarily "confined to the immediately preceding words or phrase—particularly in the absence of a comma before the qualifying clause." *Id.* (quotations omitted). We noted further that, when the qualifying clause is set apart by a comma, "it is clear that it modifies every element within the list." *Kane*, 390 Md. at 164, 887 A.2d at 1071. *Kane* does not aid us in our interpretation task here because there is no list of terms in subsection (2) nor any question regarding which term among many the "subject to" clause might modify or qualify. *Maryland Dep't of the Environment v. Underwood*, 368 Md. 160, 175–76, 792 A.2d 1130, 1139 (2002), is unhelpful for similar reasons.

By our reading, the plain text of the policy flies in the face actually of the rules of grammar. We take as our guide two popular volumes concerning modern grammar: Bryan A. Garner's *A Dictionary of Modern Legal Usage* (2d. ed. 1995) and Lynne Truss' *Eats, Shoots & Leaves: The Zero Tolerance Approach to Punctuation* (2003).

Garner compares restrictive and nonrestrictive clauses. Restrictive clauses "take no commas (for commas would present the added information as an aside)." Garner, *supra* at 765. Garner identifies several mistakes in the usage of restrictive clauses, one of which is making wrongly a restrictive clause nonrestrictive. Garner, *supra* at 766. This "fairly common" error occurs when the relative clauses are set off illogically by commas when it is necessary actually to the meaning of the sentence. *Id.*

Truss has this to say about "commas that come in pairs," such as the commas bookending the "subject to" clause in this case: "[t]he first rule of bracketing commas is that you use them to mark both ends of a 'weak interruption' to a sentence—or a piece of 'additional information.' The commas mark the places where the reader can—as it

(Continued…)

17

between the two provisions. The "subject to" clause present in subsection (2) incorporates subsection (1)'s per person limits and says simply that when two or more persons sustain bodily injury as the result of one accident, the "per person" limits of the policy discussed in subsection (1) apply still. The following hypothetical highlights similarities in the parties' arguments:

> Suppose the Connors had a policy with GEICO in effect at the time of the accident with fictional policy limits of $100,000 per person and $300,000 per occurrence. Bracketing for the moment any potential contribution from the tortfeasor, both parties agree that the Connors could recover collectively no more than the $300,000 per accident limit. Both parties agree further that the per accident limit of subsection (2) is "subject to" subsection (1) in the sense that the "per person" limits apply still in the "per accident" context where more than one person is injured. Specifically, in our hypothetical,

---

(…continued)
were—place an elegant two-pronged fork and cleanly lift out a section of the sentence, leaving no obvious damage to the whole." Truss, *supra*, at 90.

The presence of the commas bookending the phrase "subject to the above provision respecting each person" renders technically the phrase nonrestrictive. But the meaning of subsection (2) changes radically if one ignores the "subject to" clause, as one must do with a nonrestrictive clause. In order to avoid a nonsensical and wholly meaningless interpretation of the clause, we overlook the GEICO gecko's violation of grammatical rules and treat the clause (as it clearly was intended to be treated) as if it were restrictive. *See Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700, 710 (2007) ("'[I]f reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can sensibly and reasonably be followed.'" (quoting *Sanger v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277, 283 (1964))).

although the per accident limit is $300,000, each of the Connors would be subject to the $100,000 per person limit and could therefore recover collectively only $200,000. On this much, the parties agree. The terms of the hypothetical policy unambiguously command that result. In order to calculate the amount payable under subsection (2), then, the parties must calculate first the amount payable to each individual person had they been the only insured involved hypothetically in the accident, pursuant to subsection (1). Those individual amounts calculated under subsection (1) are then subjected to the "cap" of subsection (2).

The policy held by the Connors had policy limits of $300,000 per person and $300,000 per occurrence. Again, bracketing any potential contributions from the tortfeasor, if the value of the Connors' claims exceeded $300,000 each as it did here, the method for calculating the proceeds due to the Connors from GEICO proceeds the same as in the hypothetical. It just so happens that the end result is the same because the limits are the same—bracketing any contributions from Allstate, the Connors may recover together no more than the $300,000 per accident limit.

In our view, the actual dispute between the parties is, at its heart, over the point in time at which the contributions from Pond's insurance carrier are taken into account. At two separate points the policy mandates that GEICO's liability is reduced by whatever payments Pond's carrier made to the Connors. Subsection (4) provides "[t]he amount payable under this coverage will be reduced by all amounts: (a) [p]aid by or for all

19

persons or organizations liable for the injury . . . ." Also, the definition of "uninsured motor vehicle" notes that the limit of GEICO's liability is "the amount of Uninsured Motorists coverage as stated in the Declarations less the amount paid to the insured that exhausts any applicable liability insurance policies, bonds, and securities on behalf of any person who may be held liable for the bodily injury or death of the insured." (emphasis removed).

Subsection (4) provides that the "amount payable under this coverage" will be reduced by payments received from persons or organizations liable for the injury, such as Allstate on behalf of Pond. We interpret the phrase "this coverage" to refer to the uninsured motorist coverage generally. Therefore, once the parties get through the calculations and caps of subsection (1) and (2) and arrive at a penultimate number, they are required at that point by subsection (4) to "credit" payments made by other entities such as Allstate. This is the final amount owed by GEICO. This understanding of subsection (4) is confirmed by the policy's definition of "uninsured motor vehicle," which mandates that any other amount paid to the insured of any person who may be held liable for the bodily injury or death of the insured be deducted from the amount calculated pursuant to the declarations.

## V. CONCLUSION

We conclude that the policy is not ambiguous and the terms of the policy mandate that the total damages due to the Connors as a couple are capped at $300,000 pursuant to the per accident limit of the policy. Allstate has paid already each of the Connors $100,000, which amounts are deducted from the amount that GEICO would be required

20

otherwise to pay the Connors pursuant to subsection (4).    Accordingly, GEICO is responsible for the remaining $100,000, which has been paid already to the Connors.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**

21