**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1023**

───────────────

BROWN GOLDSTEIN LEVY LLP; JOSHUA TREEM,

Plaintiffs - Appellants,

v.

FEDERAL INSURANCE COMPANY,

Defendant - Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Thomas E. Johnston, Chief District Judge. (1:20-cv-01313-TEJ)

───────────────

Argued: March 8, 2023                                    Decided: May 18, 2023

───────────────

Before WILKINSON and THACKER, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────────

Affirmed by published opinion. Judge Thacker wrote the opinion in which Judge Wilkinson and Judge Keenan joined.

───────────────

**ARGUED:** John Thorpe Richards, Jr., BOGORAD & RICHARDS PLLC, for Appellants. Katherine Booth Wellington, HOGAN LOVELLS US LLP, Boston, Massachusetts, for Appellee. **ON BRIEF:** David Newmann, Alexander B. Bowerman, Philadelphia, Pennsylvania, Marc A. Marinaccio, HOGAN LOVELLS US LLP, Baltimore, Maryland, for Appellee.

───────────────

THACKER, Circuit Judge:

The law firm of Brown Goldstein Levy LLP ("BGL") and one of its partners, Joshua Treem, (collectively, "Appellants") filed suit against their insurer, Federal Insurance Company ("Appellee"), when it refused to provide coverage for costs Appellants incurred after the Government investigated Treem, executed a search warrant at BGL's office, and notified Treem that his representation of certain clients may present a conflict of interest. The district court dismissed Appellants' complaint, holding that there was no "Claim," as that term is defined in the insurance policy, and alternatively that any costs Appellants incurred were excluded from the policy's definition of "loss." Because we conclude that there is no "Claim," we affirm.

## I.

### A.

In 2014, the Government began investigating attorney Kenneth Ravenell ("Ravenell") in connection with a federal racketeering investigation. Ravenell engaged Appellants to represent him in the investigation. On January 11, 2019, the Government sent Treem a letter (the "Ravenell Conflict Letter") informing him that he was "now a subject of the investigation and [his] conduct [was] within the scope of the grand jury's investigation." J.A. 51.[1] In the Ravenell Conflict Letter, the Government "advise[d] [Treem] that there are multiple nonwaivable conflicts of interest that prevent [Treem] from

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

continuing to represent Kenneth Ravenell in connection with the ongoing grand jury investigation." *Id.*  The Government concluded the letter by stating, "[w]e trust that you understand that these conflicts warrant your recusal and disqualification from further representation of Mr. Ravenell.  Please advise us promptly if you do not intend to withdraw from your representation of Mr. Ravenell." *Id.*

Upon receipt of the Ravenell Conflict Letter, Treem obtained counsel to represent him in connection with the Government's investigation, including the Government's position that he could no longer represent Ravenell.  Appellants also "retained ethics counsel to advise them with respect to the effect, if any, the Government investigation and the [Ravenell Conflict Letter] might have on [BGL's] other clients." J.A. 157.

On June 13, 2019, the Government obtained a search and seizure warrant for BGL's offices, which it executed on June 18, 2019.  In executing the warrant, the Government seized tens of thousands of documents, including "all of Treem's emails, regardless of their relation to Ravenell or relevance to the ongoing investigation." J.A. 244–45.  That same day, the Government sent Treem's counsel a letter (the "Target Letter") to advise that Treem was "a target of the ongoing criminal investigation and the Grand Jury has substantial evidence linking Mr. Treem to the commission of crimes." *Id.* at 55.  The Target Letter also informed Treem that "search warrants were executed at two law firms – [BGL] and Ravenell Law" and that there was "a filter review protocol in place for the items seized pursuant to the search warrants." *Id.*

In response to the seizure, Appellants sought relief in the district court, arguing that the seizure was beyond the scope of the investigation into Treem and Ravenell, and further

objected to the Government's use of a "Filter Team" to inspect the documents seized for attorney client privilege. Specifically, Appellants filed a motion for a temporary restraining order and a preliminary injection pursuant to Rule 65 of the Federal Rules of Civil Procedure, and a motion for the return of property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure. Appellants ultimately litigated that case to this court, where they prevailed. *See In Re Search Warrant*, 942 F.3d 159 (4th Cir. 2019). Appellants maintain that they incurred over $230,000 in defense costs related to the search warrant litigation.

On June 28, 2019, the Government sent Treem another letter (the "Target Conflict Letter") indicating that it believed that his "representation of [a] defendant in [a] related civil case . . . present[ed] a possible conflict of interest with [Treem's] personal interests as a target of a federal grand jury investigation" because Treem's client was cooperating with the Government in a criminal case. J.A. 57. The Government further informed Treem of its belief that Treem's client "should be advised of the possible conflict so that he may waive the conflict or find new counsel. If [the client] elects to waive the possible conflict, we believe that the waiver should be confirmed in court or on the record." *Id.* Finally, the letter asked Treem to "notify [the Government] as soon as practicable whether [the client] wishes to obtain new counsel or waive the possible conflict. If the latter, we will schedule the proceeding at a mutually convenient time with the Court." *Id.* at 57–58.

4

B.

Appellants obtained a professional liability insurance policy from Appellee covering claims made between November 21, 2018, and November 21, 2019 (the "Policy").

In relevant part, the insuring clause of the Policy provides "[t]he [Appellee] shall pay **Loss** on behalf of an **Insured** on account of any **Claim** first made against such **Insured** during the **Policy Period** . . . for a **Wrongful Act** committed by the **Insured**." *Id.* at 25 (emphases in original). The Policy defines a "Claim" as any of the following:

> (a) a written demand or written request for monetary damages or non-monetary relief;
> (b) a written demand for arbitration;
> (c) a civil proceeding commenced by the service of a complaint or similar pleading; or
> (d) a formal civil administrative or civil regulatory proceeding (including a disciplinary or grievance proceeding before a court or bar association) commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document
>
> against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

*Id.* (emphases in original). The term "loss" includes "defense costs," which the Policy defines as "that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses . . . incurred in defending any Claim." *Id.* at 26 (emphasis in original). Loss does not include "any costs incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief," or to "any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, demand or request that is not then a **Claim** even

5

if such matter subsequently gives rise to a **Claim**." *Id.* at 27 (emphases in original).  Lastly, the Policy defines a "wrongful act" as "any actual or alleged act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Professional Services** by the **Firm** or by an **Insured Person** acting in his or her capacity as such on behalf of the **Firm**." *Id.* at 28 (emphases in original).

On June 19, 2019, Appellants gave notice to Appellee of their intent to seek insurance coverage pursuant to the Policy for the losses incurred in the search warrant litigation (the "Search Warrant Claim") and the defense costs associated with defending Treem in connection with the criminal investigation (the "Partner Claim").  According to the Complaint, the Search Warrant Claim was based on "the Government's application for a search warrant, and subsequent" execution of that warrant, and the Partner Claim was based on "(a) the target letter the Government issued to [Treem]; (b) the search warrant the Government executed; (c) the Government's demand that [Treem] withdraw as counsel for [Ravenell]; and (d) the Government's demands that [Treem] notify other clients of potential conflicts arising out of the Government's ongoing criminal investigation of [Treem]."  J.A. 158.  The Search Warrant Claim sought coverage for the legal fees and expenses related to the search warrant litigation.  The Partner Claim sought coverage for the costs Appellants incurred in connection with the Government's investigation of Treem and for the costs Appellants incurred in connection with engaging ethics counsel.  Appellee denied Appellants' request for coverage pursuant to the policy on March 6, 2020.

C.

On May 27, 2020, Appellants filed the instant action asking the court to declare the parties' rights and obligations pursuant to the Policy and seeking damages for breach of contract.[2] Specifically, counts one and two of the Complaint seek coverage for Appellants' losses associated with the Search Warrant Claim, and counts three and four seek coverage for their losses associated with the Partner Claim.

In July 2020, Appellee filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties also filed cross motions for summary judgment. On December 2, 2021, the district court issued an order granting Appellee's motion to dismiss and denying the motions for summary judgment as moot. In doing so, the district court held that the Search Warrant Claim was not entitled to coverage pursuant to the Policy because it did not fall within the Policy's definition of a "Claim," and even if it did, the costs associated with the search warrant litigation do not constitute "defense costs" under the Policy. As for the Partner Claim, the district court was "skeptical" that the conflict letters the Government sent Treem constituted "Claims," but even assuming

---

[2] Appellants' Complaint asserted complete diversity of citizenship as the basis for federal subject matter jurisdiction. Because BGL is a limited liability partnership, the Complaint should have alleged the citizenship of each of BGL's members. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004) (explaining that a partnership's citizenship "is that of its members"). The Complaint did not do so but instead alleged BGL's place of registration and principal place of business. Therefore, as pled, the Complaint failed to satisfy us of our jurisdiction. Nevertheless, at the direction of the court, the parties filed a joint letter pursuant to Federal Rule of Appellate Procedure 28(j) setting forth the facts necessary to establish that complete diversity does exist. Treating the letter as a constructive amendment of the Complaint pursuant to 28 U.S.C. § 1653, we are satisfied that we have jurisdiction to consider this appeal.

7

they did, the court held that the costs incurred by Appellants related to the Partner Claim were not covered losses pursuant to the Policy.

Appellants timely filed this appeal.

II.

"We review de novo the district court's dismissal of the complaint under Rule 12(b)(6)." *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 930 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).

As a general rule, "extrinsic evidence should not be considered at the 12(b)(6) stage." *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Nevertheless, "we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Id.* (alterations adopted) (internal quotation marks omitted) (citations omitted).

Because this case is in federal court based on diversity jurisdiction, we follow state law in interpreting the insurance contract at issue. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties agree the relevant state law is Maryland. In Maryland, "the foremost rule of construction is to apply the terms of the insurance contract itself." *Springer v. Erie Ins. Exch.*, 94 A.3d 75, 85 (Md. 2014) (internal quotation marks omitted)

8

(citations omitted). Courts must "accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense." *Megonnell v. United Servs. Auto Ass'n*, 796 A.2d 758, 771 (Md. 2002) (citations omitted). "In that vein, insurance contracts are construed as ordinary contracts." *Id.* at 771 (citations omitted).

Maryland courts do "not construe insurance policies as a matter of course against the insurer." *MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995, 1005 (Md. 2003). Rather, only when a policy term is "ambiguous" will a Maryland court "construe that term against the drafter of the contract which is usually the insurer." *Id.* at 1006. "A policy term is considered ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Connors v. Gov't Emps. Ins. Co.*, 113 A.3d 595, 603 (Md. 2015) (internal quotation marks omitted) (citation omitted). If "no ambiguity in the terms of the insurance contract exist[s], a court has no alternative but to enforce those terms." *Megonnell*, 796 A.2d at 772.

## III.

As discussed above, Appellants submitted requests for insurance coverage for both the Search Warrant Claim and the Partner Claim. The Policy provides for coverage only for "Claims," as that term is defined in the policy. All parties agree here that the only arguably applicable definition of a covered Claim is "a written demand or written request for . . . nonmonetary relief . . . against an Insured for a Wrongful Act." J.A. 25. As this court has previously held when interpreting nearly identical language, "[t]here is no

9

ambiguity in this policy language." *SNL Fin., LC v. Philadelphia Indem. Ins. Co.*, 455 Fed. App'x 363, 368 (4th Cir. 2011).

## A.

We begin with the Search Warrant Claim. Appellants argue that the "[G]overnment's application for and execution of the search and seizure warrant on the BGL offices was clearly" a written demand or request for nonmonetary relief as required by the Policy. Appellants' Opening Br. at 19. In Appellants' view, "an application for a search warrant expressly 'request[s]' relief against BGL, and the issued warrant demands compliance." *Id.* The district court concluded, "[s]earch warrants are not forms of 'relief,' but rather constitute judicial authorization—based upon a finding of probable cause—to conduct searches of places and things." *Id.* at 257. The district court further held that because "[t]he Government did not seek to redress any diminution of its legal rights, nor did it seek remedy for any harm brought upon it by [Appellants] in its pursuit of the Search Warrant," the warrant application was not a demand or request for relief against the insured. *Id.* at 261. We agree with the district court.

The Government's application for the search warrant was not a written request for non-monetary relief against Appellant. To be sure, the warrant application asked the court to grant law enforcement authorization to search and seize BGL's files. But that authorization is not relief "against an Insured" as required by the Policy. J.A. 25. The

10

ordinary meaning of relief in the legal sense[3] is "[t]he redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court."  Black's Law Dictionary (11th ed. 2019).  Relief "against the insured," then, is the redress or benefit one party seeks, via court order, from another party.  When the Government asked the court for authorization to search and seize BGL's files, it was not seeking redress or a benefit from BGL.  Indeed, the warrant was issued and directed to law enforcement -- not to BGL.  And while the resulting warrant may have been adverse to BGL, it was not "against an Insured."  That is, the target of a warrant is "not asked to say or to do anything" in response to the warrant. *Andresen v. Maryland*, 427 U.S. 463, 473 (1976).  Therefore, the warrant application is not a "Claim," as defined in the Policy.

Similarly, the search warrant itself is not a "Claim" because it is not a written demand or request.  Contrary to Appellants' assertion that a warrant "demands compliance," the target of a warrant is "not asked to say or to do anything" in response to the warrant. *Andresen*, 427 U.S. at 472.  Instead, the warrant authorizes law enforcement to carry out the search and seizure without regard to any response by the target of the warrant.

In support of their argument that the search warrant is a "Claim," Appellants cite several cases which hold that subpoenas are written demands or requests for relief.  But a subpoena differs from a search and seizure warrant in that it *does* command the recipient

---

[3] The context of the Policy language makes clear that the parties intended to use "relief" in the legal sense.  Therefore, we apply that ordinary meaning. *Megonnell*, 796 A.2d at 771.

11

to comply.[4]   Further, we are not persuaded by Appellants' reliance on *Protection Strategies, Inc. v. Starr Indem. And Liability Co.*, No. 1:13-CV-00793, 2013 WL 10724338, at *1–2 (E.D. Va. Sept. 10, 2013) and *Agilis Benefit Servs. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 5:08-CV-213, 2010 WL 11595321, at *11 (E.D. Tex. Feb. 24, 2010).  Neither case is binding upon this court, and neither provides the type of reasoned analysis offered by the district court in this case.

Neither the search warrant application nor the resulting search warrant are "written demand[s] or written request[s] for . . . nonmonetary relief . . . against an Insured" as required by the Policy.  J.A. 25.  Therefore, the Search Warrant Claim fails because Appellants cannot state a claim for relief.

## B.

Turning to the Partner Claim, Appellants argue that "[t]here could not be a clearer example of a written demand for nonmonetary relief" than the Ravenell Conflict Letter and the Target Conflict Letter (collectively, the "Conflict Letters").  Appellants' Opening Br. at 38–39.  We disagree.

Each of the letters at issue was sent by the Government to "advise" Treem of his status and inform him of potential conflicts of interest.  J.A. 51, 57–58.[5]   Contrary to

---

[4] We need not determine here whether compliance with a subpoena would constitute "relief," and so we decline to do so.

[5] Though the Conflict Letters were not attached to the Complaint, they were furnished to the district court when Appellee moved to dismiss. Because the Conflict Letters are integral to and explicitly relied upon in the Complaint, and Appellants did not challenge their authenticity, the district court considered them in ruling on the motion to (Continued)

Appellants' assertions, the Conflict Letters neither "demanded" nor "requested" Treem's withdrawal from representation. The Ravenell Conflict Letter merely advised Treem of the nonwaivable conflict and stated, "[w]e trust that you understand that these conflicts warrant your recusal and disqualification from further representation of Mr. Ravenell. Please advise us promptly if you do not intend to withdraw from your representation of Mr. Ravenell." J.A. 51. This letter makes no demand that Treem withdraw from representation -- it only informs him of his ethical obligations. The only "request" at all is the Government's request that Treem "advise us promptly" *if* he did not intend to withdraw. There is no doubt that this is not a demand or request for relief against an Insured.

Likewise, the Target Conflict Letter advised Treem that a different client of his had entered into a cooperation agreement with the Government such that Treem had a potential but waivable conflict of interest with the client. The letter stated the Government's "belie[f] that [the client] should be advised of the possible conflict so that he may waive the conflict or find new counsel." J.A. 57. The Government then cited a case in support of its belief and again asked that Treem "[p]lease notify us as soon as practicable whether [the client] wishes to obtain new counsel or waive the possible conflict." *Id.* at 57–58.

Like the Ravenell Conflict Letter, the Target Conflict Letter makes no demand or request for relief against an Insured. The Government's request to be notified promptly as to how Treem intends to proceed is not a request for "[t]he redress or benefit, esp. equitable

---

dismiss. *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Appellants do not claim this was in error, so we too consider the Conflict Letters in our analysis.

13

in nature (such as an injunction or specific performance), that a party asks of a court." Black's Law Dictionary (11th ed. 2019).

The Conflict Letters are not "Claims." Despite Appellants' attempts to characterize them as "demands," they are not. Therefore, Appellants cannot state a claim as to the Partner Claim.

IV.

For the foregoing reasons, the district court's dismissal of Appellants' Complaint is

*AFFIRMED*.

14